*Hayes v. Dahkle*

# United States Court of Appeals
# For the Second Circuit

August Term 2019

Argued:  February 27, 2020
Decided: October 5, 2020

No. 19-650

TAHEEN HAYES,
*Plaintiff-Appellant*,

*v.*

T. DAHLKE, CORRECTION OFFICER, COXSACKIE CORRECTIONAL FACILITY, DANIEL F. MARTUSCELLO, SUPERINTENDENT, COXSACKIE CORRECTIONAL FACILITY, RAYMOND SHANLEY, DEPUTY OF SECURITY, COXSACKIE CORRECTIONAL FACILITY, JASON A. MEIER, CORRECTION OFFICER, COXSACKIE CORRECTIONAL FACILITY, GREGORY E. LANGTRY, CORRECTION OFFICER, COXSACKIE CORRECTIONAL FACILITY, STEPHEN A. BENCE, E. COON, CORRECTION OFFICER, COXSACKIE CORRECTIONAL FACILITY, K. HOFFMAN, J. IARUSSO, O.R.C./INMATE COUNSELOR, COXSACKIE CORRECTIONAL FACILITY,
*Defendants-Appellees.*[*]

Appeal from the United States District Court
for the Northern District of New York
No. 16-cv-1368, Thomas J. McAvoy, *Judge*.

---

[*] The Clerk of the Court is directed to amend the caption as set forth above.

Before: LIVINGSTON, *Chief Judge*, SULLIVAN, AND NARDINI, *Circuit Judges*.

Plaintiff-Appellant Taheen Hayes, a New York State inmate, alleges that Defendants-Appellants, all employees of the New York Department of Corrections and Community Supervision ("DOCCS"), violated his constitutional rights under the First and Eighth Amendments when they sexually assaulted him and retaliated against him for filing grievances. The district court granted summary judgment to Defendants based, in part, on its conclusion that Hayes failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). We disagree, and hold that where, as here, an inmate follows the steps prescribed by the DOCCS Inmate Grievance Procedure but prison officials do not respond to the inmate's final appeal within the time allotted under the regulations, he has exhausted administrative remedies under the PLRA. We nonetheless agree with the district court that many – but not all – of Hayes's claims fail on the merits. Accordingly, we AFFIRM in part and REVERSE in part.

DAVID SHAPIRO, Northwestern Pritzker School of Law Bluhm Legal Clinic, Chicago, Illinois (Hillary Chutter-Ames, Business and Professional People for the Public Interest, Chicago, Illinois, *on the brief*), *for Plaintiff-Appellant* Taheen Hayes.

JONATHAN D. HITSOUS, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, New York, *for Defendants-Appellees* T. Dahlke, Daniel F. Martuscello, Raymond Shanley, Jason A. Meier, Gregory E. Langtry, Stephen A. Bence, E. Coon, K. Hoffman, J. Iarusso.

Robert Matthew Quackenbush, The Legal Aid Society, New York, NY, *for Amicus Curiae* The Legal Aid Society.

James M. Bogin, Prisoners' Legal Services of New York, Albany, NY, Michael E. Cassidy, Prisoners' Legal Services of New York, Plattsburgh, NY, *for Amicus Curiae* Prisoners' Legal Services of New York.

RICHARD J. SULLIVAN, *Circuit Judge*:

This case presents an issue of first impression under the Prison Litigation Reform Act ("PLRA") – namely, whether an inmate who has adequately completed every step of the New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Procedure must wait indefinitely for prison officials to respond to his final appeal before he may commence suit in federal court.[1]

On November 17, 2016, Plaintiff-Appellant Taheen Hayes, an inmate in New York State's Coxsackie Correctional Facility ("Coxsackie"), filed a complaint under 42 U.S.C. § 1983 alleging that Defendants-Appellees – Superintendent Daniel F. Martuscello, Correction Officer ("C.O.") T. Dahlke, C.O. Jason A. Meier, C.O. Gregory E. Langtry, C.O. Stephen A. Bence, C.O. E. Coon, C.O. K. Hoffman, Deputy Superintendent of Security Raymond Shanley, and Officer Rehabilitation Counselor James Iarusso – violated his constitutional rights under the First and

---

[1] This case was heard in tandem with *Dickinson v. York*, No. 18-2781, which is being resolved in a separate summary order filed simultaneously with this opinion.

Eighth Amendments. Hayes alleged that Dahlke sexually molested him during a pat frisk conducted before a routine cell search, and that, after Hayes filed a grievance about the incident, prison officials repeatedly retaliated against him, leading him to file additional grievances regarding their retaliatory conduct. Hayes followed the administrative procedures outlined by the DOCCS Inmate Grievance Procedure, but the Central Office Review Committee ("CORC") did not respond within the 30 days provided by the regulations. Hayes filed suit in the United States District Court for the Northern District of New York while his appeals were pending before the CORC. The district court (McAvoy, *J.*) granted summary judgment in favor of Defendants-Appellees.

On appeal, Hayes argues that the district court erred in dismissing several of his claims on the grounds that he failed to exhaust administrative remedies. We agree, and hold that Hayes exhausted his administrative remedies when he followed the prison's procedures but the CORC failed to respond to his appeal within the mandatory timeline prescribed by the regulations. We nonetheless agree with the district court that many of Hayes's claims fail on the merits. Accordingly, we **REVERSE** the district court's judgment as to Hayes's First Amendment retaliation claims against Hoffman and Meier, and his Eighth

4

Amendment excessive force claims against Meier, Langtry and Dahlke, but **AFFIRM** the district court's judgment as to the remaining claims.

## I. BACKGROUND

### A. New York State's Inmate Grievance Program

DOCCS regulations outline the procedures that apply to the Inmate Grievance Program at Coxsackie. First, the inmate must generally file a grievance with the Inmate Grievance Resolution Committee ("IGRC") within 21 days of the incident. N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7 § 701.5(a)(1), (b). The IGRC must render a decision within 18 days of receipt. *Id.* § 701.5(b)(2)(ii), (b)(3)(i). If the IGRC renders an adverse decision, the inmate has seven days from receipt to appeal to the superintendent of the facility, who then has 20 days to respond. *Id.* § 701.5(c). If the superintendent renders an adverse decision, the inmate has seven days to appeal to the CORC. *Id.* § 701.5(d)(1)(i). The CORC, in turn, "shall review each appeal [and] render a decision on the grievance . . . within 30 calendar days from the time the appeal was received." *Id.* § 701.5(d)(3)(ii).[3]

---

[3] In the text of the NYCRR, this provision appears below the actual 701.5(d)(2) as a second 701.5(d)(2), followed by 701.5(d)(4). We recognize this as a scrivener's error and refer to the second 701.5(d)(2) as 701.5(d)(3) for clarity. *See, e.g.*, *Girard v. Chuttey*, No. 18-2997, 2020 WL 5415477, at *2 (2d Cir. Sept. 10, 2020).

Under the regulations, both the inmate and prison officials may request an extension of any of the time limits outlined in the Inmate Grievance Procedure. *Id.* § 701.6(g). But extension requests from the officials will only be granted "with the written consent of the grievant." *Id.* § 701.6(g)(2). "Absent such extension, matters not decided within the time limits may be appealed to the next step." *Id.*

An inmate alleging sexual abuse, however, need not follow this three-step procedure. Instead, DOCCS regulations provide that an allegation concerning an incident of sexual abuse or sexual harassment "shall be deemed exhausted if official documentation confirms that" the inmate reported the incident "to facility staff." *Id.* § 701.3(i).

## B. Facts

Hayes, who has been in DOCCS custody since 2003, was imprisoned at Coxsackie in 2016, when the events forming the basis of this appeal occurred. In total, this appeal concerns six claims: an Eighth Amendment sexual assault claim against T. Dahlke ("Claim One"); First Amendment retaliation claims against K. Hoffman ("Claim Two"), Daniel F. Martuscello ("Claim Three"), James Iarusso ("Claim Four"), and Jason A. Meier ("Claim Five"); and an Eighth Amendment

6

excessive force claim against Meier and Gregory E. Langtry ("Claim Six").[4]  We

recite the facts pertaining to each claim, construing the evidence in the light most

favorable to Hayes and resolving all factual ambiguities in his favor.  *See Cioffi v.*

*Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006).

This case stems from a pat frisk that occurred on April 15, 2016, during

which Hayes contends that Dahlke sexually molested him.  That day, Dahlke

conducted a routine search of Hayes's cell, which had been scheduled pursuant to

a DOCCS policy encouraging correction officers to search each inmate's cell at

least once every sixty days.  When searching an inmate's cell, an officer must pat

frisk the inmate, which is "a search by hand of an inmate's person . . . while the

inmate is clothed."  J. App'x 308.  Prison regulations state that, while "[c]ontact

through the clothing with the genitalia, groin, . . . inner thigh, and buttocks is a

necessary component of a thorough pat frisk[,] . . . staff must avoid any

penetration of the anal or genital opening through the clothing" and "must not lift

or otherwise manipulate the genitalia during a pat frisk."  *Id.*

---

[4] In the district court, Hayes brought several other claims, including a supervisory liability claim against Raymond Shanley and Eighth Amendment excessive force claims against Stephen Bence and E. Coon. Hayes does not press those claims on appeal.

Hayes contends that during this pat frisk, which lasted five to eight minutes and was always through his clothing, Dahlke "had his lower body (genitals) pressed up against [Hayes's] butt and tightly pressed his hands down [Hayes's] back and into the crack of his butt (inside) all the way down and around his groin." J. App'x 382–83 (internal quotation marks and alterations omitted). He testified during his deposition that Dahlke "lifted up and was going around" his testicles. J. App'x 255. Although he affirmed that Dahlke did not make any sexual comments to him during the pat frisk, Hayes interpreted it as sexual because "of the closeness and the amount of time it took." *Id.* Dahlke did not discover any contraband on Hayes and proceeded to search his cell, during which time Hayes contends that Dahlke asked him questions like, "do you consider yourself a male or female?" and "do you suck dick or fuck men?" J. App'x 383 (alterations omitted). Later that day, and again the following day, Hayes contacted the Prison Rape Elimination Act ("PREA") hotline to report the incident. He also reported the incident to Superintendent Martuscello, and soon thereafter filed a written grievance against Dahlke with the facility's staff.

Hayes alleges that he suffered from a pattern of abuse and retaliation after reporting the incident. First, he contends that one month after Dahlke's alleged

8

sexual assault, another correction officer, Hoffman, filed a false misbehavior report stating that he heard Hayes yelling to another inmate, "call the PREA Hotline, tell them that the officer touch your dick during a pat[ ]frisk, it works all the time, I do it, trust me." J. App'x 261. According to Hayes's complaint, Hoffman's report falsely stated that he told Hayes to stop yelling, and that Hayes responded that he would file a grievance against him as well.

On May 16, 2016, as a result of the report, Hayes was placed in "keeplock," a form of solitary confinement, pending a disciplinary hearing. Hayes told Meier, who worked at keeplock, that he was there because of the false report, and Meier responded by calling him a "fucking liar." J. App'x 45, 275. Later that day, Meier observed Hayes's keeplock interview with a nurse. During the interview, the nurse asked if Hayes had been sexually assaulted before being transferred to keeplock. Although the nurse only meant assaults within 72 hours of the transfer, Hayes responded yes, referring to the April incident with Dahlke. According to Hayes, Meier then "went crazy," and yelled, "Oh, you want to fucking play these games. Okay. All right. You want to play these fucking games. You fucking faggots get us fired." J. App'x 276, 46. After the nurse left, Hayes alleges that

Meier yelled in Hayes's face that he would "fuck [him] up right now." J. App'x 46–47, 276.

As it turned out, Hayes only stayed in keeplock for one day. His continued protest of the handling of his grievance landed him in the Special Housing Unit ("SHU"), where he remained for about a month. After he was released, Hayes submitted a grievance alleging that Hoffman filed a false misbehavior report against him. A few days later, Hoffman approached Hayes, telling him that he would be "out of here soon," and that "you mess with one of us, you got to mess with all of us." J. App'x 51, 264. Another time, according to Hayes, Hoffman told him, "I just seen the captain about your grievance, you won't fucking quit complaining[,] right[?]" J. App'x 52. Hoffman then added, "Dahlke said hi!" *Id.* The misbehavior report was later expunged, although the record does not reflect why.

As Hayes tells it, following his release from SHU, he also experienced retaliation from Superintendent Martuscello. Hayes alleges that Superintendent Martuscello called him into his office, and asked if he was going to write additional grievances against staff members. When Hayes told Martuscello that various correction officers had retaliated against him, Martuscello allegedly replied,

"[W]hat do you expect to happen[?]" and "[M]aybe you should stop writing, [since] you know what happen[s] when you write, right[?]" J. App'x 283. Martuscello then told Hayes that prison staff are "going to have a problem" with an inmate who writes grievances. *Id.* Martuscello also reminded Hayes that he was facing deferred SHU time for a prior disciplinary infraction, which Hayes interpreted as a threat "that if [he] continue[d] to" pursue his grievances, Martuscello would "put [him] back in [the] special housing unit." J. App'x 50, 385. This conversation prompted Hayes to file a grievance against the superintendent.

According to Hayes, he then faced additional retaliation after meeting with Iarusso, a counselor in the grievance office. Hayes alleged that Iarusso told him that "maybe if [he] stop[ped] filing grievances then maybe all of this would go away." J. App'x 52. When Hayes told Iarusso that he "had a constitutional right to redress . . . and shouldn't have to be subjected to retaliation because of it[,] Iarusso laughed and responded[,] 'You must [not] know how Coxsackie runs.'" *Id*. A few days later, Hayes went before the IGRC regarding an unrelated grievance and again asked about the grievance he had filed against Superintendent Martuscello. He contends that during this hearing, Iarusso, a member of the IGRC, responded that he had discarded the grievance and that he

11

would never personally file a grievance against the superintendent. Hayes then filed another grievance, reporting Iarusso's conduct during the IGRC hearing.

Hayes alleges that, five days later, the retaliation escalated when Meier and Langtry attacked and beat him. He reports that, while escorting him back to keeplock, Meier opened the door to the housing area and said something that included the word "faggot." J. App'x 265. He alleges that Meier then attacked him from behind and slammed him to the ground, causing him to lose consciousness. Meier then repeatedly punched Hayes, at which point Langtry joined in and began kicking him as well. Hayes was taken to the hospital, where he was given five stitches to his right eye and was treated for blurred vision, loss of consciousness, and lower back pain. About a week later, Hayes filed a grievance against Meier and Langtry for retaliation and excessive force.

## C. Procedural History

Hayes filed a single complaint in federal court on November 17, 2016, which addressed his numerous grievances. There is no dispute that Hayes followed the grievance procedures for each, and that all of his grievance appeals – except his sexual assault allegation against Dahlke – were still pending before the CORC as of November 17th. For each of the grievances (except the grievance against

12

Superintendent Martuscello), Hayes filed suit more than 30 days after the CORC received the appeal. With respect to the grievance against the superintendent, however, Hayes filed suit only 27 days after the CORC received the appeal. The CORC would eventually deny each grievance – five to seven months after receipt, well after the commencement of Hayes's district court case.

In federal court, Defendants first moved to dismiss Hayes's claims for failure to state a claim, which the district court granted in part and denied in part. Hayes does not challenge any part of that ruling on appeal. Defendants later moved for summary judgment on the remaining claims. The district court referred the motion to a magistrate judge, and subsequently adopted the magistrate judge's report and recommendation (1) granting summary judgment for Dahlke because his conduct was not "of the kind" that violated the Eighth Amendment, J. App'x 407; (2) dismissing the First Amendment retaliation claims against Hoffman, Superintendent Martuscello, and Iarusso for non-exhaustion, and alternatively dismissing them on the merits; and (3) dismissing the assault claims against Meier and Langtry for non-exhaustion but not addressing the merits. Hayes filed a timely notice of appeal.

13

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review the district court's grant of summary judgment *de novo*. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 121–22 (2d Cir. 2016). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In granting summary judgment, the court is "required to view the evidence in the light most favorable to the party opposing summary judgment [and] to draw all reasonable inferences in favor of that party." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).

Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986), are insufficient to create a genuinely disputed fact.

## III. DISCUSSION

On appeal, Hayes argues that the district court erred by (1) dismissing each of his claims, except for his Eighth Amendment sexual assault claim, for failure to exhaust since he filed suit before the CORC, the final administrative review body, had issued a decision on his grievance; (2) dismissing, in the alternative, Claims Two through Five on the merits; and (3) granting summary judgment on Claim One – his Eighth Amendment sexual assault claim – on the merits.[5] We address each argument in turn.

### A. An Inmate Exhausts Administrative Remedies When He Follows the Entire Procedure but the CORC Fails to Respond Within the 30-Day Deadline

The PLRA requires an inmate to exhaust all "available" administrative remedies before bringing a federal civil rights action. 42 U.S.C. § 1997e(a). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "[A]side from the 'significant'

---

[5] Defendants do not dispute that Hayes exhausted his administrative remedies on his Eighth Amendment sexual abuse claim. Soon after the initial pat frisk, Hayes reported the incident in a number of ways, including filing a grievance, which constituted "official documentation" to "facility staff" – all that is required to exhaust a sexual abuse claim under the regulations. *See* NYCRR tit. 7 § 701.3(i).

textual qualifier that 'the remedies must indeed be "available" to the prisoner,' there are 'no limits on an inmate's obligation to exhaust . . . .'" *Williams*, 829 F.3d at 123 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016)). An administrative procedure is "unavailable" when (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the scheme is "so opaque that it becomes, practically speaking, incapable of use," meaning that "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60.

Hayes contends that a prisoner exhausts administrative remedies when he completes every required step of the grievance procedure yet the CORC – the last appellate body within the administrative scheme – fails to respond within the 30-day time limit prescribed by the regulations. In the alternative, he argues that the CORC's delay rendered further remedies "unavailable" under *Ross*. Defendants concede that Hayes has followed each step of the grievance procedure in a timely manner, but contend that he was required to wait until the CORC rendered a decision before filing suit, even if more than 30 days had elapsed since the CORC

received the appeal. Defendants maintain that "[t]o properly exhaust administrative remedies, an inmate must not only appeal to the CORC, but receive a decision," Defendants' Br. at 28, and that remedies are only "unavailable" if the CORC does not respond within a "reasonable" amount of time. Defendants' Br. at 32.

We have not yet addressed in an authoritative opinion whether an inmate must wait for a response from prison officials to exhaust administrative remedies. Defendants contend that our decision in *Neal v. Goord*, 267 F.3d 116 (2d Cir. 2001), *abrogated on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002), supports the proposition that an inmate must "receive" a decision in order to exhaust. Defendants' Br. at 28. But in *Neal* we considered only whether exhausting administrative remedies *after* a complaint is filed can save a case from dismissal. 267 F.3d at 121–22. We consequently had no occasion to consider whether an inmate is required to receive a final decision from the CORC before filing suit.[6]

---

[6] Defendants also look to our decision in *Gizewski v. New York State Dep't of Corr. & Comty. Supervision*, 692 F. App'x 668 (2d Cir. 2017), in which, like here, the plaintiff filed suit after the 30-day deadline but before the CORC decided his appeal. But in addition to being a non-precedential summary order, *see* 2d Cir. Local R. 32.1.1, *Gizewski* never directly addressed whether administrative remedies were exhausted after the expiration of the 30-day CORC deadline, and instead simply appears to have proceeded on the assumption that they were not. As explained below, it is this argument that forms the basis of our holding here.

We therefore turn to the text of the regulations to determine the inmate's and the prison's respective obligations. DOCCS regulations provide that when a prisoner appeals an adverse decision of the superintendent to the CORC, the CORC "*shall* review each appeal [and] render a decision on the grievance . . . within 30 calendar days from the time the appeal was received." NYCRR tit. 7 § 701.5(d)(3)(ii) (emphasis added). "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (noting that the world "shall" is "mandatory" and "normally creates an obligation impervious to judicial discretion").

Although some grievance programs give the agency some discretion or flexibility as to when it must decide an appeal, *see, e.g.*, *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004) (applying exhaustion requirement in the context of a regulation requiring the agency to issue a decision within 60 days of the appeal "whenever possible"), DOCCS regulations impose a 30-day deadline with no qualifications. In fact, the regulations specifically prohibit prison officials from stalling the resolution of an inmate's grievance by ignoring the various deadlines

throughout the process. Instead, to obtain an extension "at any level of review," the agency must obtain the inmate's consent. NYCRR tit. 7 § 701.6(g)(2). "Absent such extension, matters not decided within the time limits may be appealed to the next step." *Id.* Of course, after CORC review, there is simply no "next step" in the grievance process – other than to file a lawsuit in court.[7]

Defendants respond that, despite the provision's clear language, the 30-day deadline is really no deadline at all. Rather, they argue that it is "aspirational," since "[t]he failure to decide appeals within that timeframe does not divest the CORC of authority to decide the matter thereafter." Defendants' Br. at 30–31. We recognize that New York courts have held that the time limit in § 701.5(d)(3)(ii) is "directory, not mandatory," meaning that a petitioner seeking to annul a tardy determination from the CORC must show that she was substantially prejudiced by the delay. *See, e.g., Jones v. Fischer*, 110 A.D.3d 1295, 1296–97 (3d Dept 2013), *appeal dismissed*, 23 N.Y.3d 955 (2014); *Ortiz v. Goord*, 302 A.D.2d 830, 830–31 (3d

---

[7] The regulations state that "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the [Inmate Grievance Procedure] supervisor in writing to confirm that the appeal was filed and transmitted to [the] CORC." NYCRR tit. 7 § 701.5(d)(3)(i) (the "status check provision"). But the status check provision simply provides an inmate with a mechanism to see if the supervisor "filed and transmitted" the appeal "to [the] CORC." *Id.* It does not allow the inmate to compel or otherwise prompt a decision from the CORC. Moreover, because a supervisor could confirm that she transmitted the appeal simply by consulting her own records, the status check provision does not even require the supervisor to contact the CORC at all. The status check provision, therefore, does not support the argument that there are additional remedies following an appeal to the CORC.

Dept 2003). But the CORC's ability to decide a grievance after the 30-day time period expires says nothing about whether an inmate has exhausted the procedures for the purposes of the PLRA.

Also unavailing is the argument that Hayes did not exhaust all available administrative remedies because he could have brought an Article 78 proceeding in state court to compel the CORC to consider his appeal. *See* N.Y. C.P.L.R. § 7801–06. As an initial matter, Defendants do not cite to a single case where a prisoner has actually used an Article 78 proceeding to compel a CORC decision, leaving us to doubt that this is even a viable remedy. Regardless, the fact remains that "it is the prison's requirements . . . that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Thus, the availability of a state mechanism outside of the prison's grievance procedure is irrelevant to the question of whether an inmate has exhausted administrative remedies under the PLRA.

We therefore hold that, because the DOCCS Inmate Grievance Procedure imposes a mandatory deadline for the CORC to respond, an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations. We decline to impose a "reasonableness" requirement found nowhere in the text,

which would leave inmates – and courts – to blindly speculate how long one must wait before filing suit. *See, e.g.*, *Staples v. Patane*, No. 9:17-cv-0703 (TJM) (TWD), 2018 WL 7361009, at *9 (N.D.N.Y. Dec. 7, 2018), *report and recommendation adopted*, 2019 WL 757937 (N.D.N.Y. Feb. 20, 2019) (concluding that plaintiff had not exhausted remedies where the CORC had not replied in ten months, which was "more than the five[-]month delay found insufficient" in another case but "far less than the two years which resulted in a finding of availability" in another); *Ford v. Smith*, No. 9:12-cv-1109 (TJM) (TWD), 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (holding that a six-month delay before the CORC responded did not render administrative remedies unavailable). While the exhaustion requirement is designed to ensure that a prisoner uses "all steps that the agency holds out, and do[es] so *properly* (so that the agency addresses the issues on the merits)," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)), it is not designed to allow prison officials to stall the resolution of complaints – meritorious or not – for an indefinite period of time.

In reaching this decision, we join six other circuits that have considered state prison procedures with similar mandatory deadlines and found that the administrative remedies were either exhausted or "unavailable" when the prison

21

did not respond within the allotted time. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[T]o be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively. . . . Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond." (quoting *Woodford*, 548 U.S. at 88)); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."); *see also Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) ("[W]e hold that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (noting that "the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable," although finding that this was "not what happened" in the case before it); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (agreeing with other circuits that "have deemed administrative remedies exhausted when prison

22

officials fail to respond to inmate grievances because those remedies had become 'unavailable,'" because the court "refuse[d] to interpret the PLRA so narrowly as to . . . permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances" (internal quotation marks and alterations omitted)); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (holding that the "district court did not err in declining to dismiss [plaintiff's] excessive force claim for failure to exhaust administrative remedies" because the prison did not respond to his complaint and thus no further administrative proceedings were "available"). Because we rule on exhaustion alone, we decline to consider whether the administrative procedures here were so "opaque" that they are "unavailable" under *Ross*. In doing so, we avoid wading into the often complex and highly fact-specific inquiries of the unavailability exception.

Here, there simply were no further steps under the regulations that Hayes could have taken to obtain relief on most of his grievances. Recall that, for all but one grievance, Hayes waited to file suit until more than 30 days after the CORC received the appeal of his grievance. For those claims, therefore, Hayes exhausted his administrative remedies.

23

That said, Hayes waited only 26 days after the CORC received the appeal of his grievance against the superintendent, four days short of the 30-day deadline for the CORC to respond. *See* NYCRR tit. 7 § 701.5(d)(3)(ii). While Hayes need not wait indefinitely after the agency fails to follow its own deadline at the final stage of appeal, he must actually wait for that deadline to expire before filing suit. To hold otherwise would be in direct conflict with the Supreme Court's holding that "proper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly." *Woodford*, 548 U.S. at 90 (emphasis and internal quotation marks omitted); *see also Jones*, 549 U.S. at 218 (emphasizing that to properly exhaust administrative remedies, a prisoner "must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself" (internal quotation marks and citation omitted)). And it is well-settled that "[s]ubsequent exhaustion after suit is filed . . . is insufficient" and "will not save a case from dismissal." *Neal*, 267 F.3d at 121–22.

Hayes does not argue otherwise, instead asserting that a remedy was unavailable here because "it was obvious at this point that [the] CORC would not honor its own deadlines, rendering remedies unavailable." Hayes's Br. at 33. But

Hayes's subjective belief does not render the remedies unavailable here. *See Jernigan*, 304 F.3d at 1032 ("Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available."). Because Hayes filed suit before the 30-day deadline, we affirm the district court's judgment as to Claim Three against Superintendent Martuscello.

**B.  Hayes Raised a Triable Issue of Fact as to His Retaliation Claim Against Hoffman But Not as to His Retaliation Claim Against Iarusso**

Because we find that Hayes exhausted his administrative remedies for his First Amendment retaliation claims against Hoffman and Iarusso, and since the district court also assessed those claims on the merits, we address the district court's alternative holding that they were entitled to summary judgment because Hayes failed to demonstrate that he suffered any adverse action.

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action.'" *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). The parties do not contest that the first requirement has been met,

25

as filing a grievance is protected conduct. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004).

To be an "adverse action," retaliatory conduct must be the type that would deter "a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). We look to the specific circumstances in which retaliation claims arise, "bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Id.* (internal quotation marks and alterations omitted). An inmate must first show that the protected conduct was "a substantial or motivating factor in the prison officials' disciplinary decision," *Holland*, 758 F.3d at 225 (internal quotation marks omitted), in response to which the defendant official can then show that the disciplinary action would have occurred regardless, such as by showing that the inmate actually committed the actions charged in the misbehavior report. *Id.* at 226. "[B]ecause we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine

prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

1.  <u>Claim Two: First Amendment Retaliation Claim Against Hoffman</u>

Hayes contends that Hoffman retaliated against him by filing a false misbehavior report. The district court found that Hayes (1) had not alleged an adverse action, since Hayes spent only one day in keeplock as a result of the purportedly false complaint, and (2) had not established a causal connection between the retaliatory action and protected activity, since Hayes had not shown that Hoffman knew that Hayes filed a grievance. We disagree, and conclude that Hayes has elicited circumstantial, but sufficient, evidence to create a genuine issue of material fact as to whether retaliation was a substantial factor in Hoffman's misbehavior report.

First, while Hayes was only in keeplock for one day, it appears that this was because he was promptly moved to the SHU for additional misbehavior. It is not clear from the record exactly how long he would have otherwise gone to keeplock, but it appears that he was not notified that the misbehavior report at issue was removed from his record until ten days after he was sent to keeplock. We conclude

that the limited nature of the record here cannot preclude a finding of adverse action.

Second, we find that Hayes has raised a triable issue of fact regarding the causal connection between the retaliatory activity and adverse action. "We have held that the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation," *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002), but have not drawn a "bright line" as to exactly when a temporal relationship supports a finding of a causal relationship. *Gorman– Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001); *compare id.* at 555 (holding that five months between the protected action and the retaliation supported an inference of a causal connection) *with Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding that the passage of three months weighed against finding a causal connection).

Here, approximately one month passed between the events underlying Hayes's PREA claim and the purportedly false misbehavior report. Moreover, according to Hayes, Dahlke exhibited a continued pattern of sexually-charged verbal harassment throughout the time between the initial grievance and the misbehavior report, and Dahlke and Hoffman worked on the same unit floor the

28

day the misbehavior report was filed. Additionally, the very language of the misbehavior report – which alleged that Hayes falsified PREA complaints – ties the protected act to the retaliation, particularly given Hoffman's later statements, including his alleged assertion that if "you mess with one of us, you got to mess with all of us." J. App'x 51, 264. Added to that is the fact that the complaint against Hayes was abruptly expunged, for which Defendants have provided no explanation. *See Baskerville v. Blot*, 224 F. Supp. 2d 723, 733 (S.D.N.Y. 2002) (noting that "the administrative dismissal of the misbehavior report . . . weigh[s] in plaintiff's favor"); *see also Gayle*, 313 F.3d at 683 ("A false reason for the report's issuance would support the inference that the real reason was the improper one: retaliation.").

So the temporal connection, language of the misbehavior report, and other surrounding circumstances support a finding of a nexus between the grievance and the purportedly retaliatory action. That means, when taking the facts in the light most favorable to Hayes, the district court erred: sending a prisoner to keeplock for some indeterminate amount of time could be enough to chill speech of a prisoner of ordinary firmness, especially in light of the other threats regarding

29

solitary confinement that Hayes claimed to have experienced.  Accordingly, we reverse the judgment of the district court on Claim Two.

2.  Claim Four:  First Amendment Retaliation Claim Against Iarusso

Hayes contends that the district court erred in finding that Iarusso did not retaliate against him when he (1) told Hayes that "maybe all of this would go away" if he stopped filing grievances, (2) refused to file Hayes's grievance against Superintendent Martuscello for a month, and (3) told Hayes in front of the IGRC that he would never personally file a grievance against Martuscello.  Hayes's Br. at 49.  We disagree.

At most, Iarusso's comments constitute vague threats that would be insufficient to deter "a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Davis*, 320 F.3d at 353 (internal quotation marks omitted).  It is well-settled that "[i]nsulting or disrespectful comments directed at an inmate generally do not rise" to the level of a constitutional violation, and "that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse."  *Id.* (internal quotation marks and alterations omitted). We acknowledge that the statements at issue here could, taken in the light most favorable to Hayes,

be viewed as implicit threats. Threats accompanied by some action, like putting a defendant on a restricted access status, surely constitute adverse action. *See, e.g.*, *Burns v. Martuscello*, 890 F.3d 77, 93–94 (2d Cir. 2018). But even Hayes admits that the threats here were accompanied by, at most, a one-month delay in filing one of Hayes's grievances. While we have held that a prison official's *repeated* interference with an inmate's efforts to file grievances might necessitate "efforts beyond what is reasonably expected of an inmate with ordinary firmness," *Davis*, 320 F.3d at 353 (internal quotation marks omitted), we decline to find that the month-long delay in filing one grievance alleged here rises to the level of a constitutional violation. Although this is an objective standard, *Gill*, 389 F.3d at 381, it also bears noting that Iarusso's statements clearly did not prevent Hayes from filing additional grievances, since he filed grievances against Iarusso, Meier, and Langtry within a few weeks of Iarusso's allegedly chilling remarks. We think it clear that Iarusso's comments would be equally unlikely to deter an "individual of ordinary firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d at 353. Therefore, we affirm the judgment of the district court as to Claim Four.

**C. The District Court Erred in Granting Summary Judgment on Hayes's Eighth Amendment Claim Against Dahlke**

Finally, we address Hayes's Eighth Amendment claim against Dahlke, which was undisputedly timely, but which the district court rejected on the merits. The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991). To succeed on an Eighth Amendment claim, a plaintiff "must show (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted).

"Although not 'every malevolent touch by a prison guard gives rise to a federal cause of action,' the Eighth Amendment is offended by conduct that is 'repugnant to the conscience of mankind.'" *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)). "A correction[] officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." *Id.* at 254. Our "principal inquiry" in determining if there was an Eighth Amendment violation "is whether the contact is incidental to

legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257–58.

We find that Hayes has offered sufficient facts to survive summary judgment on his Eighth Amendment claim against Dahlke. To be sure, the conduct here occurred during a routine pat frisk prior to a planned search of Hayes's cell. As a general matter, pat frisks "relate to the safety and security of the facility by ensuring that inmates do not possess contraband, and prison directives make clear that pat frisks necessarily entail contact with the genitalia and buttocks, where inmates have been known to conceal drugs and weapons such as razor blades. *See* S. App'x 25. But the routine nature of these pat frisks alone does not shield an officer from liability, and the conduct described by Hayes, if believed, could certainly support an inference that Dahlke engaged in conduct beyond what was required for a pat search in order to "gratify [his] sexual desire" or "humiliate" Hayes. *See Crawford*, 796 F.3d at 254.

Although, as the district court observed, "there is no indication that C.O. Dahkle penetrated plaintiff's anus, intentionally or otherwise, or in any way squeezed or fondled [Hayes's] genitals," J. App'x 405–06, Hayes testified that

Dahlke's over-the-clothing pat frisk was quite unlike any he had experienced in his thirteen years as an inmate. Hayes, who was no stranger to frisks, alleged that the five- to eight-minute frisk by Dahlke was "[w]ay longer than a typical" pat frisk. J. App'x 254. And according to him, the way Dahlke touched him was starkly different from other pat frisks he had experienced. For starters, rather than the normal "patting and sliding," this frisk "was more so grabbing" as in a "massage." *Id.* Dahlke also "lifted up and was going around" Hayes's testicles, in violation of prison regulations. *Id.* at 255.

Hayes further testified that Dahlke did part of this invasive search while he "pressed" his "lower body (genitals) . . . up against" Hayes's behind in a manner that, if credited, would appear to have no legitimate purpose in a bona fide pat search. J. App'x 383. Indeed, as we explained in *Crawford*, if an "officer intentionally brings his or her genitalia into contact with the inmate in order to arouse or gratify the officer's sexual desire or humiliate the inmate, a violation is self-evident because there can be no penological justification for such contact." 796 F.3d at 257. Perhaps it is less "self-evident" in the context of an invasive frisk that at least starts out for legitimate penological reasons: after all, by its very nature, such a frisk has to happen up close and personal, so it may involve inadvertent

and innocent bumping. Still, reading the record in the light most favorable to Hayes, genital-to-buttock contact was "just not like a regular search." J. App'x 252. For his part, Dahlke does not argue that a penological purpose would justify that kind of contact; he denies outright that he pressed his genitals against Hayes. J. App'x 335. That swearing match, of course, is not for us to adjudicate.

According to Hayes, Dahlke followed up that physical contact with a verbal barrage that again, if credited, would support an inference that the contact was designed to arouse himself or humiliate Hayes, or both. In that way, this case resembles *Crawford*, where a correction officer "allegedly 'squeezed' and 'fondled'" the plaintiff's privates and then made demeaning sexual comments about them. 796 F.3d at 258–59. As in *Crawford*, the gratuitous conduct described by Hayes, coupled with the sexually charged comments allegedly made by Dahlke immediately following the pat frisk, supports an inference that Dahlke used the opportunity presented by a routine pat search to molest Hayes "in order to arouse himself, humiliate [the plaintiff,] or both." *Id.* at 259. If credited, that is precisely the sort of "intentional contact with an inmate's genitalia . . . which serves no penological purpose and is undertaken with the intent to gratify the officer's

sexual desire or to humiliate the inmate, [in] violat[ion of] the Eighth Amendment." *Id.* at 254.

Of course, it must be noted that Dahlke vehemently denies that he engaged in any improper touching of Hayes during the pat frisk; he likewise denies that he ever made the crass and demeaning statements attributed to him by Hayes concerning Hayes's sexual orientation. J. App'x 103, 335. To the contrary, Defendants contend that Hayes's allegations are utterly false and cynically designed to "game" the system against corrections officers in light of DOCCS regulations that are now more solicitous with respect to inmate allegations of sexual abuse or sexual harassment. *See* NYCRR tit. 7 § 701.3(i). But the ultimate resolution of who is telling the truth, Hayes or Dahlke, must be made by a jury, since there are clearly disputed issues of fact and credibility determinations that cannot be made by a court on a motion for summary judgment. All that matters now is that, if believed, Hayes's allegations establish a constitutional violation.[8]

---

[8] Dahlke alternatively argues that he is entitled to qualified immunity because "it was objectively reasonable to believe that the thorough search Hayes described did not violate the Eighth Amendment." Defendants' Br. at 19. We disagree. Although there is clearly a factual dispute as to whether Dahlke ever engaged in the conduct alleged by Hayes, there can be no doubt that the illegality of such conduct was clearly established by *Crawford* the year before the frisk took place. *See* 796 F.3d at 254 ("A correction[] officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment.").

We therefore reverse the district court's grant of summary judgment on Claim One.

## CONCLUSION

Accordingly, for the reasons stated above, we **REVERSE** the district court's dismissal of Claims One, Two, Five, and Six and **REMAND** for further proceedings consistent with this opinion. We **AFFIRM** the district court's judgment as to Claims Three and Four.