*Thomas v. Aldi, Dougherty, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of February, two thousand twenty-four.

Present:
>            DEBRA ANN LIVINGSTON,
>                 *Chief Judge*,
>            STEVEN J. MENASHI,
>            MARIA ARAÚJO KAHN,
>                 *Circuit Judges.*

_____

OMAR THOMAS,

>            *Plaintiff-Appellant*,

>            v.                                                    22-3069

JHON ALDI, DOUGHERTY, CAPT., TAMMARO, LT., BARBUTO, C/O, LAUGHMAN, C/O, HALL, C/O,

>            *Defendants-Appellees.**

_____

For Plaintiff-Appellant:              AUSTIN BERESCIK-JOHNS, Law Office of Austin B. Johns, LLC, Hartford, CT.

---

* The Clerk of Court is respectfully directed to amend the official caption as set forth above.

For Defendants-Appellees: THADIUS L. BOCHAIN, Assistant Attorney General *for* William Tong, Connecticut Attorney General, Hartford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Bolden, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Omar Thomas, a former pretrial detainee within the custody of the Connecticut Department of Correction ("DOC"), appeals from a judgment of the United States District Court for the District of Connecticut, entered November 4, 2022, dismissing his civil rights claims on summary judgment after determining that he did not exhaust administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), *see* 42 U.S.C. § 1997e(a). Thomas asserts that he exhausted available remedies by achieving the ends he sought or, in the alternative, that he established a genuine issue of material fact as to whether DOC's administrative procedures were unavailable to him. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the arguments presented on appeal, which we recount here only as necessary to explain our decision to affirm.

\* \* \*

"We review a district court's decision to grant summary judgment *de novo*, resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

2

56(a). We also review *de novo* a district court's judgment that a plaintiff failed to exhaust administrative remedies under the PLRA. *Williams v. Priatno*, 829 F.3d 118, 121-22 (2d Cir. 2016).

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). In other words, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). "[A]side from the 'significant' textual qualifier that 'the remedies must indeed be "available" to the prisoner,' there are 'no limits on an inmate's obligation to exhaust . . . .'" *Hayes v. Dahlke*, 976 F.3d 259, 268 (2d Cir. 2020) (quoting *Williams*, 829 F.3d at 123) (internal citation omitted). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

As relevant to this appeal, DOC imposed two key requirements on detainees like Thomas who sought administrative remedies. First, prisoners were required to attempt to resolve any problems informally and to attach a form detailing such attempts to any subsequent, formal request for remedies. Second, prisoners had to submit each request on a separate form.

Thomas formally sought administrative remedies on two occasions relevant to this appeal. In March 2018, he filed a written request to be placed in protective custody due to conflicts with other detainees at Corrigan Radgowski Correctional Center ("CRCC"), the facility where he was incarcerated. Because he had orally requested protective custody, to no avail, on two prior occasions, his March 2018 filing also requested "a civil action" against the staff for alleged deliberate

3

indifference to his safety. CRCC returned the filing without a disposition both because Thomas failed to attach the required documentation of prior attempts to resolve the problem and because the filing contained two distinct requests. Thomas then orally requested, and subsequently received, recreation alone status, which provided him physical separation from all other prisoners not on recreation alone status. According to Thomas, this separation, though technically distinct from protective custody, was effectively the relief he sought when he filed the March 2018 grievance.

Thomas again pursued administrative remedies in June 2018 after being transferred to MacDougall Walker Correctional Institution ("MWCI") and suffering an assault from another prisoner who entered his cell when an officer errantly opened the door. In his grievance, Thomas specifically requested the incident report from the assault, the identity of the officer who opened the door, and that the staff be more vigilant to prisoner safety. MCWI staff returned the grievance without a disposition both because each grievable matter therein was not submitted separately and because the incident report and name of the officer were available through a separate "FOI" process. The returned form also requested more information to investigate the assault. Subsequently, the officer who opened the door took responsibility for his actions.

On appeal, Thomas first contends that, because he received favorable determinations—*i.e.*, recreation alone status, the officer's admission to opening his cell door—he effectively "exhausted" the available remedies under *Ortiz v. McBride*, 380 F.3d 649, 653 (2d Cir. 2004) (declaring that "inasmuch as [the plaintiff] obtained a favorable determination," "no such further appeal was required"), *cert. denied*, 543 U.S. 1187 (2005). But the district court rightly observed that we have since "clarified" our judgment in *Ortiz*. *Thomas v. Aldi*, No. 3:18-CV-1350, 2022 WL 16716160, at *9 (D. Conn. Nov. 4, 2022). The proper standard "is not whether the prisoner has

4

a *reason* to pursue administrative remedies; it is whether such remedies are *available* to him." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006).

In this case, as in *Ruggiero*, administrative remedies were available to Thomas. After receiving the response to his March 2018 request, Thomas could have re-filed separate grievances alleging deliberate indifference and requesting protective custody, notwithstanding DOC's decision to grant him recreation alone status. Likewise, Thomas could have re-filed his June 2018 request or sought the incident report through the FOI process, notwithstanding the officer's admission to having opened the door. Such actions "would have allowed prison officials to reconsider their policies and discipline any officer who had failed to follow existing policies." *Id.* at 177. "Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits [by] afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). Thomas's recreation alone status, and the officer's admission of responsibility, "while arguably providing him with the relief he sought, did not provide him with all of the relief available to him." *Ruggiero*, 467 F.3d at 177. Because the favorable outcomes "did not render all administrative remedies unavailable," *id.*, they do not demonstrate the required exhaustion.

Thomas argues in the alternative that administrative remedies were unavailable to him. "An administrative procedure is 'unavailable' when (1) 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;' (2) the scheme is 'so opaque that it becomes, practically speaking, incapable of use,' meaning that 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;' or (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation.'" *Hayes*, 976 F.3d at 268 (quoting *Ross*, 578 U.S. at 643–44).

Thomas's arguments do not persuade us to disturb the district court's judgment. First, as to "dead end" unavailability, there is no evidence of Thomas re-filing his March 2018 request, even after it was returned with instructions to attempt written informal resolution and include only one request per filing. There is also no evidence that he tried to re-file his June 2018 requests, notwithstanding DOC's instructions to re-file each remedy request on a separate form and to pursue the alternative FOI procedure as needed. Having failed to follow these directions, Thomas cannot show that the DOC remedy procedures were a "dead end."

We also disagree with Thomas's opacity argument. As the district court observed, staff at CRCC and MWCI returned his grievances with instructions to provide additional information and to follow specified protocols. He did not comply. He also presents no argument that other DOC inmates are unable to proceed through these grievance protocols. Thomas has therefore failed to demonstrate that the remedy procedure was "prohibitively opaque[] such that no inmate could actually make use of it." *Williams*, 829 F.3d at 126.

Finally, Thomas claims he was thwarted when officials gave him "the runaround" by, among other things, returning his June 2018 grievance with a request for more information. Although we share the district court's concern that "it is not clear what, if any, additional information Mr. Thomas could have provided that the DOC did not already know or have access to," *Thomas*, 2022 WL 16716160, at *11, the fact remains that Thomas neither provided more information nor attempted to resubmit his grievance. "To constitute an 'available' remedy, a process requires only 'the *possibility* of some relief.'" *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 82 (2d Cir. 2021)

6

(quoting *Ross*, 578 U.S. at 643). Because Thomas did not pursue the possibility of relief that DOC provided, the district court did not err in determining that he had failed to exhaust the available remedies.

\* \* \*

We have considered Thomas's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court