21-1303-pr
Romano v. Ulrich et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2021

(Argued: May 26, 2022        Decided: September 15, 2022)

Docket No. 21-1303-pr

_____

ANTHONY ROMANO,

*Plaintiff-Appellant*,

v.

KEVIN ULRICH, C.O., JOSEPH CIANCI, C.O.,
GARY COVIELLO, C.O., DANIEL LEONARD, C.O.,
ROY BELL, C.O., GREGORY CARNEY, C.O.,
JEFFREY HAZARD, BRIAN FEENEY, JEFFREY
LACAPRUCCIA, JEFFREY MILLER, MARK
CUNNINGHAM,

*Defendants-Appellees*.

_____

Before: LIVINGSTON, *Chief Judge,* POOLER, and SACK, *Circuit Judges*.

Appeal from United States District Court for the Western District of New York (John L. Sinatra, Jr., *J*.) granting defendants' motion for summary judgment on Anthony Romano's 28 U.S.C. § 1983 claim for excessive force. Because Romano was excused from his statutory obligation to exhaust his administrative remedies due to his transfer to mental health confinement which rendered the grievance program unavailable to him, we reverse the grant of summary judgment.

Reversed and remanded.

_____

DAVID BENTIVEGNA, Prisoners' Legal Services of New York (Karen Murtagh, James Bogin, Michael Cassidy, *on the brief*), New York, N.Y., *for Plaintiff-Appellant*.

JONATHAN D. HITSOUS, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, N.Y., *for Defendants-Appellees*.

POOLER, *Circuit Judge*:

Anthony Romano, a prisoner in New York, appeals from the judgment of the United States District Court for the Western District of New York (John L.

Sinatra, Jr., *J.*) granting summary judgment to defendant correction officers on his 28 U.S.C. § 1983 claim for excessive force.

Romano alleges that while he was incarcerated at the Attica Correctional Facility in New York, a facility run by the New York Department of Corrections and Community Supervision ("DOCCS"), he was beaten by corrections officers who were attempting to break up a fight. Romano was then moved from his cell to the infirmary to recover from his wounds. From there, he was transferred first to a mental health observation cell, then to the Central New York Psychiatric Center ("CNYPC") in the custody of the New York State Office of Mental Health ("OMH"). During his stay at CNYPC, Romano attempted to file a grievance for the alleged beating, but the grievance was refused for being untimely, for not being filed at the DOCCS facility at which he was housed, and because he was not allowed to file grievances with DOCCS while in OMH custody.

Romano challenged that finding in federal court, arguing that while the New York administrative code governing the filing of grievances for inmates provided him with twenty-one days to file a grievance, he was transferred to OMH custody after just thirteen days, rendering his administrative remedy unavailable to him. The district court granted defendants' first motion for

3

summary judgment on the grounds that because Romano had thirteen days to file his grievance, the administrative remedy was sufficiently available. *See Romano v. Ulrich*, No. 13-cv-633, 2017 WL 3701972, at *4 (W.D.N.Y. Aug. 28, 2017). On appeal, a panel of this Court vacated and remanded that decision. *Romano v. Ulrich*, 773 F. App'x 654 (2d Cir. 2019) (summary order). We observed that under N.Y. Correction Law § 402, it appeared that "Romano should have received at least five days' notice of his transfer" to OMH custody, which may have placed him on notice that he would be unable to file a grievance. *Id.* at 656. We remanded for further discovery on that issue. *Id.* at 657.

However, on remand, the parties agreed that Romano was transferred to OMH custody pursuant to an emergency provision of N.Y. Correction Law and that, accordingly, he received no advance notice. The district court relied on its prior analysis in again granting summary judgment to defendants, holding that the administrative remedy was not "unavailable" to Romano and therefore he was not excused from exhausting the remedy. *Romano v. Ulrich*, No. 13-cv-633, 2021 WL 1739219, at *1 (W.D.N.Y. Apr. 30, 2021).

We conclude that the district court erred in holding that Romano failed to exhaust his administrative remedies. Romano's transfer out of DOCCS custody

4

served as a "dead end" that effectively rendered his administrative remedy unavailable to him. *Ross v. Blake*, 578 U.S. 632, 643 (2016). Therefore, we reverse the district court's judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I. Factual Background

On February 17, 2011, while incarcerated at Attica, Romano was allegedly beaten by corrections officers who were attempting to break up a fight. Romano's pro se complaint specifically alleges that ten officers took turns kicking and stomping on his body parts, "punching" him in the face several times resulting in four lacerations to his face, a black and blue right eye, as well as a broken right cheek bone that remained "fractured" at the time of filing the grievance on May 24, 2013. App'x at 22. After the alleged assault, Romano was removed from the unit and taken to the emergency room.

The next day, Romano was moved from his cell to the infirmary, where he was held for five days until February 22, 2011. From February 22 to March 2, Romano was held in an OMH observation cell at Attica. While in the observation cell, Romano was forbidden from keeping a pen due to safety concerns.

Although "grievance-program staff regularly visit mental-health observation cells to assist those who seek to submit grievances," there is no indication that any mental-health staff visited Romano to assist him in filing a grievance. Appellees' Br. at 5.

Romano was evaluated by a physician who filed a Certificate of an Examining Physician dated March 1, 2011 to support the emergency admission of Romano to an OMH facility under N.Y. Correction Law § 402(9). Per this report, Romano suffered from bipolar disorder, paranoia, and other mental health issues. However, the report also stated that Romano's "[t]hought form is currently linear, pressured, and concrete. He is alert and oriented in all spheres, but concentration ability seems impaired by distractibility by environmental cues." App'x at 120. On March 2, thirteen days after the alleged beating, Romano was transferred to the CNYPC, where he remained until his September 22 transfer to the Great Meadow Correctional Facility.

Romano attempted to file a grievance at Attica for the alleged beating in early May 2011, while housed at CNYPC. The grievance was refused for being untimely, because it was not filed at the facility at which he was housed, and because he was not allowed to file grievances with DOCCS while in OMH

6

custody.[1] Romano attempted to file a grievance when he transferred to the Great Meadow Correctional Facility, but that filing was rejected as well. He did not appeal either decision. Romano then brought a Section 1983 action against the defendant corrections officers for excessive force in the United States District Court for the Western District of New York.

**II.     Procedural Background**

On August 28, 2017, Judge Elizabeth Wolford of the Western District of New York granted summary judgment to defendants. The district court held that Romano failed to exhaust his administrative remedies because he did not file his grievance within the twenty-one-day period after the alleged beating as required by DOCCS regulations. *See Romano*, 2017 WL 3701972. The district court reasoned that although Romano did not have twenty-one days before he was moved to CNYPC, where he was prohibited from submitting a grievance, he still "could have filed a grievance" while in the Attica infirmary for the five days immediately after the alleged beating. *Id.* at *4. In any event, the district court

---

[1] DOCCS has since revised its policy to permit inmates housed at outside agencies, such as OMH, to submit grievances at the prison facility where they were last housed.

noted, Romano did not request an exception to the time limit for filing a grievance within forty-five days while he was in custody per DOCCS regulations. *Id.*

On appeal, this Court vacated and remanded by summary order. *See Romano*, 773 F. App'x 654. However, we did not address the question briefed by the parties: "[w]hether or not DOCCS's administrative procedures are 'unavailable' *whenever* DOCCS unilaterally and without notice transfers an inmate during a grieving period such that the inmate is no longer able to file a grievance, regardless of DOCCS's motivation." *Id.* at 656. Instead, we observed that under N.Y. Correction Law §§ 402(1),(3), it appeared that "a superintendent c[ould not] transfer an inmate out of DOCCS custody for mental health reasons without first receiving a certificate from an examining physician" which was also required to be served on the inmate. *Id.* at 656-57. Therefore, Romano would have received at least five days' notice of his transfer and should have had an opportunity to contest it. Were that the case, Romano would have had access to information that made clear he would be unable to file a grievance upon his transfer outside of DOCCS, such that Romano could not demonstrate that DOCCS's procedure for filing his grievance was "unavailable" to him. However,

8

we found the record undeveloped on how this provision regarding notice was implemented, so we remanded for further discovery on Romano's transfer and what notice he was given. *Id.* at 657.

On remand, the matter was referred to Magistrate Judge Michael Roemer. The parties submitted supplemental briefing to address this Court's concerns. The magistrate judge recommended granting summary judgment to defendants. *Romano v. Ulrich*, No. 13-cv-633, 2021 WL 1740048, at *4 (W.D.N.Y. Mar. 29, 2021), *report and recommendation adopted*, 2021 WL 1739219. The parties agreed that Romano was not transferred out of DOCCS custody pursuant to N.Y. Correction Law § 402(3) as our Court assumed, but that he was actually transferred pursuant to N.Y. Correction Law § 402(9). Under Section 402(9), an inmate may be admitted on an emergency basis to OMH custody, without the procedural protections and notice that are normally afforded to mentally ill inmates prior to commitment. Defendants conceded that Romano did not receive notice of his transfer to OMH custody. The magistrate judge concluded that the "facts do not support the Second Circuit's proposed theory that Romano may have received advance notice of his OMH transfer and, therefore, may have had the grievance

9

procedures 'available' to him for the five days preceding his transfer." *Romano*, 2021 WL 1740048, at *4.

Because the district court could not resolve the exhaustion issue in the manner suggested by the Second Circuit, the magistrate judge returned to the original issue: whether Romano's impromptu transfer to OMH custody render the grievance procedures unavailable to him for exhaustion purposes. The magistrate judge found that Judge Wolford's reasoning that Romano had thirteen days to submit his grievance still applied. Therefore, the magistrate judge recommended granting summary judgment to defendants on that ground.

On April 30, 2021, the district court adopted the report and recommendation in its entirety and granted summary judgment to defendants. *Romano*, 2021 WL 1739219, at *1. Romano appealed.

**DISCUSSION**

We review de novo a district court's decision to grant summary judgment. *See Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Summary judgment is warranted when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We also review de

novo a district court's ruling on whether a plaintiff has exhausted administrative remedies under the PLRA. *Williams v. Priatno*, 829 F.3d 118, 121-22 (2d Cir. 2016).

**I.    Applicable Law**

The Prison Litigation Reform Act's ("PLRA") exhaustion provision instructs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "[A]side from the 'significant' textual qualifier that 'the remedies must indeed be "available" to the prisoner,' there are 'no limits on an inmate's obligation to exhaust[.]'" *Williams*, 829 F.3d at 123 (quoting *Ross*, 578 U.S. at 637).

*Ross* overturned Second and Fourth Circuit case law that had adopted a "special circumstances" exception to the PLRA's exhaustion requirement, "permitting some prisoners to pursue litigation even when they ha[d] failed to exhaust available administrative remedies." *Ross*, 578 U.S. at 635. The Supreme Court "reject[ed] that freewheeling approach to exhaustion as inconsistent with

11

the PLRA." *Id*. But the Court also "underscore[d] th[e] statute's built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 635-36.

*Ross* set out "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. As the Solicitor General put the point: When rules are 'so confusing that . . . no reasonable prisoner can use them,' then 'they're no longer available.'" *Id.* at 643–44. Finally, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

The Second Circuit applied *Ross* shortly after it was handed down. *Williams*, 829 F.3d 118. In *Williams*, an inmate alleged that corrections officers

12

violated his Eighth Amendment rights by brutally beating him for talking back to another officer. *Id.* at 119. Following the assault, Williams was sent to the infirmary. He alleged that while he was living in the special housing unit, he drafted a grievance and gave it to a corrections officer to forward to the grievance office on his behalf in accordance with DOCCS grievance procedures that apply to inmates in the special housing unit. *Id.* at 120-21. A week later, Williams told the prison superintendent who was making rounds in the special housing unit that he had not yet received a response to his grievance. *Id.* A week after that conversation, Williams was transferred to another facility and never received a response to the grievance and alleged that the corrections officer never filed it for him. Williams then brought a Section 1983 action in the Southern District of New York which was dismissed on grounds that, "even if Williams's grievance had never been filed, he still could have appealed the grievance to the next level because the regulations allow an appeal in the absence of a response." *Id.* at 121.

Applying *Ross*, we held that "even if Williams technically could have appealed his grievance," the "regulatory scheme providing for that appeal [wa]s 'so opaque' and 'so confusing that . . . no reasonable prisoner can use [it].'" *Id.* at

124 (quoting *Ross*, 578 U.S. at 643-44). We reasoned that the regulations did not adequately outline the process to appeal or otherwise exhaust administrative remedies where the correction officer never actually filed Williams's grievance. The regulation provided that Williams could appeal a grievance that did not receive a response if there was no reply within twenty-five days of the superintendent receiving the grievance. But in Williams's case, the superintendent never received the appeal, so this provision was never triggered. *Id.* Importantly, in a footnote in *Williams*, we "note[d] that the three circumstances discussed in *Ross* do not appear to be exhaustive, given the Court's focus on three kinds of circumstances that were 'relevant' to the facts of that case. Because those circumstances are also relevant to the facts of this case, we do not opine on what other circumstances might render an otherwise available administrative remedy actually incapable of use." *Id.* at 123 n.2 (citation omitted); *see also Rucker v. Giffen*, 997 F.3d 88, 93 (2d Cir. 2021) (citing the footnote in *Williams*).

In *Hayes v. Dahlke*, we considered whether an inmate exhausted his administrative remedies when he completed every required step of the grievance procedure, yet the Central Office Review Committee ("CORC"), the last

14

appellate body within the administrative scheme, failed to respond within the thirty-day time limit prescribed by the regulations. 976 F.3d 259, 268 (2d Cir. 2020). We held that "because the DOCCS Inmate Grievance Procedure imposes a mandatory deadline for the CORC to respond, an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations." *Id.* at 270. However, because we decided the rule on exhaustion alone, we "decline[d] to consider whether the administrative procedures here were so 'opaque' that they are 'unavailable' under *Ross*." *Id.* at 271. In so doing, we "avoid[ed] wading into the often complex and highly fact-specific inquiries of the unavailability exception." *Id.*

And in *Rucker v. Giffen*, we considered whether an inmate who experienced extreme medical distress and was hospitalized did not exhaust his administrative remedies by failing to file a grievance when he was in a critical medical condition. 997 F.3d at 90. Under the DOCCS regulations, Rucker had five days to file a grievance against the prison staff who failed to take him to the hospital until he was in critically ill condition. However, he remained in the hospital for a month, undergoing numerous serious surgeries which almost

15

caused his death, and he had to be put into a medically induced coma. *Id.* at 91.

Rucker finally filed his grievance almost a year after his life-changing hospitalization, but the prison refused to consider it because it was not filed within the five-day timeframe. We held that "administrative remedies are 'unavailable' when (1) an inmate's failure to file for the administrative remedy within the time allowed results from a medical condition, and (2) the administrative system does not accommodate the condition by allowing a reasonable opportunity to file for administrative relief." *Id.* at 90. Notably, we did not shoehorn this exception into *Ross*'s "three kinds of circumstances" where administrative remedies may be considered unavailable. Instead, we reiterated that *Ross*'s three circumstances are not "exhaustive." *Id.* at 93.

## II.    Application

The relevant DOCCS regulation here, N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 states:

> *Time limit for filing.* An inmate must submit a complaint to the clerk within 21 calendar days of an alleged occurrence on an inmate grievance complaint form (form #2131). If this form is not readily available, a complaint may be submitted on plain paper. The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility.

16

7 NYCRR § 701.5(a)(1). There is no dispute that Romano failed to file his grievance within twenty-one calendar days of the alleged beating.

In this appeal, Romano argues he was placed into a situation DOCCS grievance regulations "simply d[id] not contemplate" because he still had eight days remaining in his grievance period but was prohibited from submitting a grievance. Appellant's Br. at 18 (quoting *Williams*, 829 F.3d at 124). By the time Romano was transferred back to DOCCS custody on September 22, 2011, months had passed, and he was well beyond the grievance deadlines.

Romano also argues that the lack of notice requires a ruling in his favor under the logic of our prior summary order. In that order, we determined that because Romano should have received five days' notice of his transfer to OMH with access to information making clear that he would be unable to file a grievance once transferred, then "we cannot see how Romano could show that DOCCS's procedure was unavailable to him." *Romano*, 773 F. App'x at 657. Under our rationale, Romano argues, if he did not receive notice of his transfer, then it likewise could not be shown how the grievance procedure was available to him.

Defendants respond that even if Romano did not expect circumstances to arise that would shorten his effective deadline to submit a grievance, he still had a reasonable opportunity to submit a grievance because Romano had thirteen days before he was transferred. Defendants also contend that Romano's proposal creates an exception to the "ordinary rule that the person subject to a filing deadline bears the risk of his or her own delay." Appellees' Br. at 21. Finally, defendants argue that Romano's proposed rule is overbroad because there are other circumstances in which an inmate's time to submit a grievance is cut short, for example, a "grievant might injure himself, the prison might go into lockdown, or the inmate while still technically in DOCCS custody could unexpectedly remain at an outside medical facility." Appellees' Br. at 21.

We agree with Romano and reverse the district court's conclusion that Romano failed to exhaust his remedies. Romano's transfer out of DOCCS custody cut short his time to file a grievance which rendered the remedy "unavailable" to him.

An administrative procedure is unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. In *Ross*, the Supreme Court provided

18

the example of a prison handbook that directs inmates to submit their grievances to a particular administrative office that then disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for its purpose. *Id.*

This is precisely the situation here. Romano's transfer to OMH custody rendered him unable to file any grievance against DOCCS even though he was well within the twenty-one-day time limit under Section 701.5(a). Romano's transfer constituted a dead end because, after a transfer effected by prison officials, his administrative remedy became "[in]capable of use" for its intended purpose "in accordance with the applicable procedural rules."[2] *Id.*; *Jones*, 549 U.S. at 205.

This result is also in line with our prior decision in this case. There, we wrote that "Romano should have received at least five days' notice of his transfer, as well as the ability to contest it. Provided the required notice was given and Romano had access to information that made clear that he would be unable to file a grievance upon his transfer outside of DOCCS, we cannot see how Romano could show that DOCCS's procedure was unavailable to him on

---

[2] In fact, the district court's initial opinion indicated that Romano's claim may fit under the "dead end" exception. *See Romano*, 2017 WL 3701972, at *4.

the facts of his case." *Romano*, 773 F. App'x at 656-57 (citations omitted).

Defendants now concede that Romano was given no notice and had no opportunity to contest his transfer. Therefore, the inverse of our rationale applies—Romano was not given notice and did not have access to information that he would be unable to file a grievance upon being transferred outside of DOCCS, so the grievance procedure was unavailable to him. This is not a case where an inmate is the victim of his own procrastination; instead, Romano's time to file a grievance was prematurely curtailed by a sudden and unforeseeable transfer of which he had no notice.

It is of no import that Romano may have had thirteen days to file his grievance. First, it is not clear that Romano actually had thirteen days. He spent five days in the infirmary and eight days in an OMH observation cell. The time in the infirmary involved recovering from his serious injuries including four facial lacerations, black and blue eyes, and various fractures. While in the infirmary, Romano "faced substantial obstacles to filing a grievance including mental decompensation so severe that his delusions, paranoia, and impaired judgment left him a danger to himself and others such that emergency involuntary psychiatric hospitalization was warranted." Appellant's Br. at 25 n.1.

20

Even after he was transferred from the infirmary to the OMH observation cell, Romano did not have access to a pen to draft a grievance. Although defendants indicate that grievance-program staff regularly visit mental-health observation cells to assist those who seek to submit grievances, there is no evidence in the record that any staff approached Romano or discussed filing a grievance with him. *See* Appellees' Br. at 5; App'x at 121.

Second, because Romano had no way of knowing if or when he would be transferred from DOCCS custody to OMH custody, he cannot be penalized for failing to file a grievance at the earliest possible moment, well before expiration of a grievance period that was cut short by prison officials. Romano was not able to exhaust his administrative remedies by completing the DOCCS grievance process "in accordance with the applicable procedural rules," *Jones*, 549 U.S. at 205. The relevant DOCCS regulation provides that "[a]n inmate must submit a complaint to the clerk within 21 calendar days of an alleged occurrence on an inmate grievance complaint form." 7 NYCRR § 701.5(a). The district court's conclusion that thirteen days was sufficient for the remedy to be "available" when the relevant statute provides for twenty-one days was error because Romano's purported administrative remedy became wholly incapable of use

21

without prior notice, when he was still well within the twenty-one-day time limit, and as a result of a transfer by prison officials.

Defendants argue that Romano failed to request an exception to the twenty-one-day deadline pursuant to Section 701.5(a). Exceptions to the grievance deadline can be requested based on "mitigating circumstances" as long as they are made no more than forty-five days after the alleged occurrence. *Id.* § 701.6(g)(1). But filing a request for an exception would not have helped Romano. There is no reason to believe that Romano could have requested an exception after he was transferred to OMH custody just as he would not be permitted to file a grievance against DOCCS once transferred. Second, even if Romano had submitted a request for an exception within the thirteen days he was still in DOCCS custody, he would not have been able to file a grievance once he was transferred to OMH custody pursuant to Section 701.5(a). And Romano had no way of knowing an exception might be needed because he did not know of his transfer. Defendants' argument continues to miss the mark – the regulations permit Romano a set period of time to file a grievance or request an exception, and DOCCS cut off his time entirely without notice and after only about half the

period had elapsed. This rendered any administrative remedy practically speaking incapable of use.

## CONCLUSION

For the reasons given above, we reverse the district court's order and remand for further proceedings consistent with this opinion.