*Handsome, Inc. v. Town of Monroe*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of May, two thousand twenty-four.

PRESENT:    John M. Walker, Jr.,
            Steven J. Menashi,
                    *Circuit Judges*,
            Nusrat Jahan Choudhury,
                    *District Judge.**

_____

Handsome, Inc., Todd Cascella, Mona Cascella,

        *Plaintiffs-Appellants*,

        v.                                            No. 23-711

Town of Monroe, Planning and Zoning Commission of the Town of Monroe, Scott H. Schatzlein, Karen Martin, Steven Vavrek, Patrick O'Hara, Michael Parsell, Joel Leneker, Richard Zini,

        *Defendants-Appellees*.

_____

_____

* Judge Nusrat Jahan Choudhury of the United States District Court for the Eastern District of New York, sitting by designation.

*For Plaintiffs-Appellants*:        ALEXANDER T. TAUBES, New Haven, CT.

*For Defendants-Appellees*:        JONATHAN C. ZELLNER, Ryan Ryan Deluca LLP, Bridgeport, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Chatigny, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Handsome, Inc., is a Connecticut corporation owned and operated by Plaintiffs-Appellants Todd and Mona Cascella. The individual defendants are members of the Planning and Zoning Commission for the town of Monroe, Connecticut. The plaintiffs allege that the Commission's actions over the course of several years with respect to a property they owned and were developing violated their due process, First Amendment, and equal protection rights. This action was originally filed in Connecticut state court in July 2011 and subsequently removed to federal court. The district court granted summary judgment on March 31, 2023, and this appeal followed. We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal.

**I**

Handsome acquired the land at issue—a ten-acre parcel located at 125 Garder Road in Monroe—from Todd Cascella via a quitclaim deed in 2001. The zoning regulations in effect at the time required all uses within the relevant zone to obtain a special exception permit ("SEP") from the Commission. Handsome submitted an initial SEP application in February 2003 that stated its intention to construct a total of three industrial buildings at the site. However, it sought a permit only for the first building, which it wished to construct immediately "in order to avoid permitting delays, get the project going and produce a source of

2

income." App'x 33. The project required excavation and grading at the site prior to construction. The Commission granted the SEP for a period of five years on March 20, 2003. The SEP included a number of special conditions that required Handsome, *inter alia*, to provide periodic progress reports on grading work, post a bond in an amount to be determined by the Commission, and complete construction of the first building by March 20, 2005.

The project fell behind schedule, and only about half of the excavation and grading was completed by January 2008. Handsome applied for an SEP extension in April 2008, just before the original SEP was set to expire. The Commission held a hearing on the extension request on April 24, 2008. The hearing addressed "the lack of progress at the site," "whether the special permit authorized the excavation-related activities," "Handsome's failure to file progress reports," and "frustration … regarding laxity in the enforcement of zoning regulations by Town officials, especially with regard to excavations." *Id.* at 35-36. The chairman expressed the view that the project was "nothing but a mining operation." *Id.* at 36. The Commission voted unanimously to deny the extension, and Handsome sought review in Connecticut state court. On September 10, 2010, the Connecticut Superior Court sustained Handsome's appeal, holding that the Commission was required to grant the extension because Handsome was not in violation of any applicable statute or regulation ("*Handsome I*").

Prior to the April 2008 hearing on the extension, Handsome had submitted a plan to build a 32-unit affordable housing complex on another property on Garder Road. This proposal was denied in August 2008. Handsome appealed, and the parties ultimately entered into a settlement agreement in July 2009 that allowed Handsome to build a 28-unit complex. Meanwhile, during the pendency of the appeal from the denial of the 125 Garder Road SEP extension, a judgment of strict foreclosure on that property was entered in favor of MD Drilling and Blasting, Inc., which held a mechanic's lien on the property. Title passed to MD Drilling and Blasting on June 10, 2010. However, the new owner agreed to let Handsome continue to use the property in exchange for installment payments.

Handsome renewed its request for an extension following *Handsome I*, but the Commission did not hold a hearing on the matter until May 5, 2011. In the meantime, members of the Commission made an unannounced visit to 125 Garder Road, where they informed Todd Cascella of resident complaints regarding blasting; falsely accused him of continuing work in violation of a cease-and-desist order that had been issued—but was withdrawn—by the town planner; and threatened to require a $100,000 restoration bond. Prior to the public hearing on May 5, the Commission convened in executive session. At the hearing, the Commission voted to extend the SEP but backdated the effective date of the extension to March 2008, when the original SEP would have expired. The Commission also added new conditions to the permit and required Handsome to post a $100,000 restoration bond. Handsome appealed this decision as well. When Handsome resumed work at the site without posting the bond, the town issued a cease-and-desist order and then brought a zoning enforcement action, which was later dropped pending the resolution of Handsome's appeal.

On December 21, 2012, the Connecticut Superior Court sustained Handsome's second appeal ("*Handsome II*"). The court held that the executive session prior to the public hearing was illegal; that the Commission had no discretion to impose additional conditions when it approved the extension; and that the five-year time limit on the original SEP should have been tolled pending the resolution of the first appeal, and for that reason the extension's effective date should not have been backdated. The Connecticut Supreme Court subsequently vacated *Handsome II* on the ground that "Handsome had no standing to bring the appeal because, having lost title to the property, it was not aggrieved by the commission's decision to impose conditions in connection with the permit extension." *Handsome, Inc. v. Planning & Zoning Comm'n of Monroe*, 317 Conn. 515, 530 (2015) ("*Handsome III*"). Justice Palmer dissented because "Handsome was aggrieved by the commission's decision," which affected the "valuable interest in the property" Handsome retained through "[t]he agreement with MD Drilling." *Id.* at 554 (Palmer, J., dissenting). The majority decided that Handsome had waived

4

this argument because the plaintiffs "did not rely on the agreement as evidence of a possessory interest in the property in support of their claim of aggrievement" earlier in the litigation and "did not adequately brief" the issue on appeal. *Id.* at 532 n.7. Mona Cascella and Handsome filed for bankruptcy in 2017 and 2018, respectively.

The plaintiffs originally filed this action in the Connecticut Superior Court in July 2011, in the wake of the cease-and-desist order from the Commission. They asserted claims under the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment and sought compensatory damages, punitive damages, and attorneys' fees. The defendants moved for summary judgment on October 5, 2015, and the district court requested supplemental briefing on several issues. On March 31, 2023, the district court granted the defendants' motion for summary judgment. The district court held that the plaintiffs had Article III standing notwithstanding the Connecticut Supreme Court's decision in *Handsome III*.[1] It then held that the claims based on the denial of the SEP in April 2008 were time-barred and would have failed on the merits even if timely. The district court also held that the defendants' actions following *Handsome I* did not violate the plaintiffs' due process or First Amendment rights. Finally, the district court held that summary judgment was appropriate on the plaintiffs' equal protection claim because their proposed comparator was not similarly situated. This appeal followed.

## II

"Summary judgment is warranted when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Garcia v. Heath*, 74 F.4th 44, 47 (2d Cir. 2023) (quoting *Romano v. Ulrich*, 49 F.4th 148, 152 (2d Cir. 2022)).

---

[1] The defendants do not challenge the plaintiffs' standing on appeal. In any event, we conclude that the district court was correct that the plaintiffs have Article III standing.

"We review a district court's decision to grant summary judgment *de novo*, resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* at 47-48 (quoting *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)).

### III

The plaintiffs raise four arguments on appeal. First, they argue that the district court erred in holding that their First and Fourteenth Amendment claims related to the denial of the SEP extension in 2008 were time-barred. Second, they argue that the district court erred in holding that, even if those claims were not time-barred, summary judgment for the defendants would have been appropriate on the merits. Third, they argue that the district court erred in granting summary judgment for the defendants on the merits with respect to their First and Fourteenth Amendment claims related to the defendants' actions following the Connecticut Superior Court's decision in *Handsome I*. Fourth, they argue that the district court erred in granting summary judgment for the defendants with respect to their equal protection claim on the ground that Handsome was not similarly situated to its proposed comparator, Monroe Land Holdings ("MLH"), as a matter of law. We affirm the judgment of the district court.

### A

Because this action was brought under 42 U.S.C. § 1983, the applicable limitations period is the general statute of limitations for tort actions under the law of the state in which the district court sits—in this case, Connecticut. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Under Connecticut law, the general statute of limitations for tort actions, which we apply here, is three years. *See* Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); *see also Clark v. Hanley*, 89 F.4th 78, 91 (2d Cir. 2023) (applying Conn. Gen. Stat. § 52-577 to a § 1983 claim). The time at which a cause of action accrues under § 1983, however, is "a question of federal law that is *not* resolved by state law." *Wallace v. Kato*, 549 U.S. 384, 389

6

(2007). The Commission denied Handsome's application for an extension on April 4, 2008, and Handsome filed this action in May 2011, more than three years later. The district court held that claims based on the initial denial of the extension were time-barred.

On appeal, the plaintiffs argue that these claims were timely pursuant to the "continuing violation doctrine." Ordinarily, a cause of action accrues under § 1983 "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)). The continuing violation doctrine is an exception to this rule, and it applies when the defendant engages in a continuous pattern of wrongful behavior that "cannot be said to occur on any particular day" and no single instance of which is "actionable on its own." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see also Sherman v. Town of Chester*, 752 F.3d 554, 567 (2d Cir. 2014) (applying the continuing violation doctrine to a takings claim that was "based on an unusual series of regulations and tactical maneuvers that constitutes a taking when considered together, even though no single component is unconstitutional when considered in isolation").

The district court correctly held that the continuing violation doctrine does not apply to the plaintiffs' claims based on the April 2008 extension denial. The doctrine does not apply to a series of discrete, though related, unlawful acts, each of which is actionable on its own. *See DeSuze v. Ammon*, 990 F.3d 264, 272 (2d Cir. 2021) ("Where … plaintiffs complain of 'discrete acts' separated in time, the usual limitations rule applies.") (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)). The plaintiffs in this case allege a series of discrete unlawful acts, the first of which was the denial of the extension in 2008. Moreover, according to the plaintiffs, after Handsome applied for permission to construct an affordable housing development, the Commission became "[i]mmediately [h]ostile" to them, and this hostility was "blatant" at the meeting on the extension on April 4, 2008. Appellants' Br. 6, 8. If the Commission denied Handsome's SEP extension in retaliation for the affordable housing project, and the plaintiffs knew this, the

plaintiffs would at that time have had a "complete and present cause of action." *Green v. Brennan*, 578 U.S. 547, 554 (2015) (quoting *Graham Cty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418 (2005)). The district court correctly determined that the plaintiffs' claims became time-barred when they failed to bring those claims within three years of the denial of the SEP extension.

**B**

The plaintiffs' claims regarding the Commission's actions following the decision of the Connecticut Superior Court in *Handsome I*, on the other hand, are timely. Nonetheless, the district court correctly granted summary judgment on the merits with respect to these claims.

A substantive due process claim based on a zoning board's denial of a permit requires the plaintiff to make two showings. First, there must be "a demonstration that [the plaintiff] had a clear entitlement to the permit under state law." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).[2] "Usually, entitlement turns on whether the issuing authority lacks discretion to deny the permit, *i.e.*, is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Natale*, 170 F.3d at 263. However, it is not enough to "prov[e] that someone did not obtain what he or she is entitled to under state law. For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'" *Id.* at 262. This two-step

---

[2] We note that, in other cases, a property interest protected by the Due Process Clause may be based on a source other than state law. *See Tyler v. Hennepin County*, 598 U.S. 631, 638 (2023) ("[S]tate law cannot be the only source [of protected property interests]. Otherwise, a State could 'sidestep the Takings Clause by disavowing traditional property interests' in assets it wishes to appropriate.") (quoting *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 167 (1998)); *see also S. Cal. Edison Co. v. Orange Cnty. Transp. Auth.*, 96 F.4th 1099, 1104 (9th Cir. 2024).

framework applies to the plaintiffs' claims based on the Commission's actions following *Handsome I*.

We conclude that the district court correctly granted summary judgment to the defendants because no reasonable jury could have decided that the Commission's conduct was "so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Id.* The record shows that Handsome was behind schedule on the project, had failed to comply with conditions of the initial SEP, and was experiencing financial difficulties. Given these circumstances, the Commission's decisions following *Handsome I*—even if those decisions were contrary to Connecticut law, as the Superior Court subsequently held in *Handsome II*—were not "'conscience-shocking,' or 'oppressive in the constitutional sense,'" as opposed to "merely 'incorrect or ill-advised.'" *Ferran v. Town of Nassau*, 471 F.3d 363, 370 (2d Cir. 2006) (quoting *Lowrance v. C.O. S. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)). "Substantive due process is an outer limit on the legitimacy of government action. It does not forbid governmental actions that might fairly be termed arbitrary and capricious and for that reason correctable in a state court lawsuit seeking review of administrative action," as the Commission's actions were corrected here. *Natale*, 170 F.3d at 262.

The district court also correctly granted summary judgment for the defendants on the plaintiffs' non-time-barred First Amendment retaliation claim. "If an official takes adverse action against someone" for engaging in protected speech, "and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). The official's retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*

We agree with the district court that "[o]n this record, a jury could not reasonably find that any of the individual defendants acted with [a] retaliatory

motive" or that "retaliatory animus was the but-for cause of the challenged actions." App'x 99. The plaintiffs have failed to offer any "particularized evidence" that suggests a retaliatory motive, such as "expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Blue v. Koren*, 72 F.3d 1075, 1084 (2d Cir. 1995). In addition, the record indicates that the alleged adverse actions—the Commission's delay in acting on the extension request following *Handsome I* and the imposition of the new conditions—would have been taken regardless of the plaintiffs' decision to seek relief from the Connecticut Superior Court. As the district court explained, "the Commission did not act on the extension until after the tax foreclosure proceeding was resolved; and the new requirements were consistent with the original conditions of approval." App'x 97. The record indicates that the Commission delayed the hearing and the decision on the extension because the property might have gone into foreclosure. It also indicates that the Commission imposed the new conditions because of its concern about the lack of progress at the site rather than retaliation against the plaintiffs for availing themselves of the Connecticut courts. Because "non-retaliatory grounds are in fact []sufficient" to explain the Commission's conduct, *Nieves*, 139 S. Ct. at 1722 (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)), the plaintiffs' First Amendment retaliation claim fails.

## C

Finally, the plaintiffs brought an equal protection claim based on the Commission's issuance of the cease-and-desist order against Handsome and the requirement to post a restoration bond. The plaintiffs claim that the town did not take similar actions with respect to MLH, which was also conducting extensive excavation on a 74-area parcel of land in the same zoning district. The district court granted summary judgment on this claim because Handsome and MLH are not similarly situated.

10

The Supreme Court has recognized "class of one" equal protection claims based on selective enforcement of laws and regulations "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). However, "[i]n order to succeed in a 'class of one' claim, the level of similarity between plaintiffs and persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). The plaintiff must show, first, that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy"; and, second, that "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.* We have recently reaffirmed this "stringent similarity standard" for "class of one" claims. *Hu v. City of New York*, 927 F.3d 81, 94 (2d Cir. 2019).

The district court identified several relevant differences between Handsome and MLH that could lead a rational person to conclude that the differential treatment was justified by legitimate government interests, including Handsome's record of noncompliance with permit conditions, its financial difficulties, and the fact that work was resumed at the site without posting the bond required by the extended SEP. Based on these differences, the district court correctly concluded that Handsome and MLH were not similarly situated.

\*     \*     \*

We have considered the plaintiffs' remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11