*Edwards v. Destefano*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of April, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> STEVEN J. MENASHI,
> SARAH A. L. MERRIAM,
> *Circuit Judges*.

---

RAHEEM EDWARDS,

> *Plaintiff-Appellant*,

v.                                                                                  23-7515

CORRECTIONS OFFICER MICHAEL DESTEFANO, CORRECTIONS CORPORAL STEVEN SCHNEIDER, CORRECTIONS SERGEANT PETER MCNAMARA, CORRECTIONS SERGEANT EUGENE O'BRIEN, CORRECTIONS OFFICER EDIN CARPIO, CORRECTIONS CORPORAL BRIAN ANDERSON, CORRECTIONS OFFICER HENRY PICOLI,

> *Defendants-Appellees*.

---

For Plaintiff-Appellant:                    MAX SCHULMAN, Gibson, Dunn & Crutcher LLP, Washington, DC (Richard Mark, Gibson, Dunn & Crutcher LLP, New York, NY, *on the brief*).

1

For Defendants-Appellees:    Robert F. Van der Waag, Ian Bergstrom, Deputy County Attorneys, *for* Thomas A. Adams, Nassau County Attorney, Mineola, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **REVERSED,** and the case is **REMANDED** for further proceedings.

Raheem Edwards ("Edwards") appeals from a judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*), entered on September 29, 2023, granting summary judgment in favor of Defendants-Appellees. Edwards sued corrections officers of the Nassau County Correctional Center ("NCCC") under 42 U.S.C. § 1983, alleging that they subjected him to excessive force, denied him medical treatment, and destroyed his property. The district court concluded that Edwards had failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review de novo a district court's grant of summary judgment. *See Romano v. Ulrich*, 49 F.4th 148, 152 (2d Cir. 2022). "Summary judgment is warranted when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Garcia v. Heath*, 74 F.4th 44, 47 (2d Cir. 2023) (citation omitted).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner . . . until such administrative remedies as are

2

available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is "mandatory," *Ross v. Blake*, 578 U.S. 632, 639 (2016), and is required "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001). However, the PLRA's "edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Ross*, 578 U.S. at 639. "An administrative procedure is 'unavailable' when (1) 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;' (2) the scheme is 'so opaque that it becomes, practically speaking, incapable of use,' meaning that 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;' or (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Hayes v. Dahlke*, 976 F.3d 259, 268 (2d Cir. 2020) (quoting *Ross*, 578 U.S. at 643–44).[1]

Most relevant to this appeal, we explored the circumstances that might render a procedure a "dead end" in *Romano v. Ulrich*, 49 F.4th 148 (2d Cir. 2022). In that case, an inmate was transferred to a new facility thirteen days after an alleged assault. *Id.* at 151. Under then-applicable regulations,[2] this transfer "rendered [Romano] unable to file any grievance against DOCCS even though he was well within the twenty-one-day time limit." *Id.* at 155–56. The transfer thus "constituted a dead end because . . . [Romano's] administrative remedy became incapable of use for its intended purpose in accordance with the applicable procedural rules." *Id.* at 156 (citations, internal quotation marks, and alterations omitted). We emphasized, moreover,

---

[1] We have suggested that these three circumstances "do not appear to be exhaustive." *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016); *see also Rucker v. Giffen*, 997 F.3d 88, 93 (2d Cir. 2021).

[2] As we noted in *Romano*, the New York Department of Corrections and Community Supervision ("DOCCS") "has since revised its policy to permit inmates housed at outside agencies . . . to submit grievances at the prison facility where they were last housed." 49 F.4th at 151 n.1.

that it was "of no import that Romano may have had thirteen days to file his grievance," because "Romano's time to file a grievance was prematurely curtailed by a sudden and unforeseeable transfer of which he had no notice." *Id.*

Our reasoning in *Romano* applies with equal force here. First, Edwards was transferred from NCCC to a new facility seven days after the alleged April 19, 2013 assault. While NCCC's Inmate Handbook (the "Handbook") generally requires inmates to file a grievance within five days of the incident, it also makes clear that "time utilized in attempting to resolve the complaint informally will not be calculated into the grievance timetable." Special App'x at 49. Edwards raised oral complaints regarding the alleged assault to corrections and Internal Affairs officers on April 22 and 24, 2013, and the officers informed Edwards that they would investigate the incident. He also made repeated requests for medical care and to inventory his property, at least as late as April 23, 2013. These "attempt[s] to resolve the complaint informally" through oral reporting tolled the five-day deadline such that Edwards, like Romano, was within the applicable time limit for filing a grievance when he was transferred on April 26, 2013. *Id.*

Second, the Handbook fails to set forth a procedure by which an inmate can submit a grievance after being transferred to a new facility. "[D]efendants bear the initial burden of establishing the affirmative defense of non-exhaustion by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures which demonstrate that a grievance process exists and applies to the underlying dispute." *Williams v. Priatno*, 829 F.3d 118, 126 n.6 (2d Cir. 2016) (citations and internal quotation marks omitted). And NCCC has offered no evidence that Edwards could have filed a grievance after his transfer. Indeed, the express terms of the Handbook's "Grievance Procedure" appear difficult, if not impossible, to comply with post-

4

transfer. Special App'x at 49.[3] For example, the Grievance Procedure requires that completed grievance forms be "place[d] . . . into the grievance mailbox located in each housing area" at NCCC. *Id.* There are also no exceptions, aside from the tolling provision, to the Grievance Procedure's five-day time limit. And Defendants-Appellees (and the district court) have interpreted the Handbook to require inmates to write their grievances on an official "Inmate Grievance form," which an inmate may access in the "Inmate Law Library and during Inmate Council meetings." *Id.*; *see also* Appellee's Br. at 25. Thus, the Handbook assumes that inmates will be housed at NCCC when filing a grievance. Complying with the Grievance Procedure from a new facility might require (1) contacting NCCC, (2) requesting that they mail an "Inmate Grievance form," (3) mailing the completed form back to NCCC, and (4) having an officer at NCCC place that form in a grievance mailbox. It is not clear that these steps would be technically possible to complete within five days.

Third, Defendants-Appellees have offered no evidence that Edwards received advance notice of his transfer. Thus, as in *Romano*, "[t]his is not a case where an inmate is the victim of his own procrastination; instead, [Edwards'] time to file a grievance was prematurely curtailed by a sudden and unforeseeable transfer of which he had no notice." 49 F.4th at 156. Indeed, far from "procrastinati[ng]," Edwards repeatedly sought to resolve his complaints prior to transfer through oral reporting to corrections officers. *Id.* And beginning the day after his transfer, he wrote a series of letters seeking assistance from the Nassau County District Attorney, the United States Attorney for the Eastern District of New York, the New York Civil Liberties Union, and private counsel. The Handbook expressly suggests that inmates may report excessive force

---

[3] We assume without deciding that the Handbook requires strict compliance with the "Grievance Procedure" for an inmate to exhaust administrative remedies. Special App'x at 49.

5

complaints to, *inter alia*, "the New York Civil Liberties Union, your attorney or the District Attorney's office directly," Special App'x at 47, or "report the incident orally to a staff person," *id.* at 48. In this way, Edwards repeatedly sought to resolve his complaint before and shortly after his transfer through methods expressly endorsed by the Handbook. Romano, by contrast, first attempted to file a grievance almost three months after the alleged assault. *Romano*, 49 F.4th at 150–51.

In sum, we conclude that the present case is not materially distinguishable from *Romano*. Therefore, Edwards exhausted available administrative remedies, and the district court's judgment based on the contrary conclusion must be reversed.

*　　*　　*

We have considered Defendants-Appellees' remaining arguments and find them to be without merit. Accordingly, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6