23-581-pr (L)
*Hundley v. Frunzi*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of August, two thousand twenty-four.

PRESENT:
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> ALISON J. NATHAN,
> *Circuit Judges*.

_____

CRUSHAUN HUNDLEY,

> *Plaintiff-Appellee*,

> v.

A. FRUNZI, CORRECTION OFFICER, C. MAY, CORRECTION OFFICER, T. MALLARE, SERGEANT,

> *Defendants-Appellants*,

R. SNYDER, CORRECTION OFFICER, B. O'ROURKE, CORRECTION OFFICER, CARROLL, CAPTAIN, LESLEY POTTINGER, NURSE, JOHN DOE, CORRECTION OFFICERS #1–20,

> *Defendants*.

_____

23-581-pr;
23-6932 (Con)

FOR PLAINTIFF-APPELLEE: EDWARD SIVIN, Sivin, Miller & Roche LLP, New York, New York.

FOR DEFENDANTS-APPELLANTS: BEEZLY J. KIERNAN, Assistant Solicitor General of Counsel (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, New York.

Appeal from a judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on March 10, 2023, is **AFFIRMED**.

Defendants-Appellants Sergeant Thomas Mallare and Correction Officers Archie Frunzi and Corey May (collectively, "Defendants") appeal from the district court's judgment, entered after a jury trial, awarding compensatory and punitive damages to Plaintiff-Appellee Crushaun Hundley on his First Amendment retaliation claim brought under 42 U.S.C. § 1983. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

This case arises out of an incident during Hundley's incarceration at the Elmira Correctional Facility (the "Facility"). In mid-December 2017, Hundley filed a series of grievances, complaining that he was repeatedly mishandled and assaulted by correction officers during random and unnecessary pat-frisks in the Facility. On December 20, 2017, Sergeant Mallare visited Hundley's cell to interview him about the grievances he had filed, which also contained language threatening officers if the alleged mistreatment continued. Officers Frunzi and May were present to conduct a "pat-frisk" of Hundley prior to that interview. During the cell visit, an altercation erupted between Hundley and Officers May and Frunzi, resulting in Hundley

2

sustaining a broken rib. According to Hundley, after the pat-frisk the two officers started punching him without any justification and banged his head on a metal desk while Sergeant Mallare told him "this is what happens when you send letters up front threatening officers." Joint App'x at 144. Hundley further testified that, once he was handcuffed on the ground, one of the officers pulled down his pants and shoved an object in his rectum. According to Officers May and Frunzi, during the pat-frisk outside the cell, Hundley "came off the wall," and they needed to use force while he struggled with them, which included the officers using a bearhug to bring Hundley to the floor and handcuff him. Joint App'x at 269, 295. Both officers denied punching Hundley, banging his head, or sticking an object in his rectum.

Hundley filed the instant complaint asserting claims pursuant to Section 1983, alleging that he was subject to excessive force in violation of the Eighth Amendment and to retaliation for filing grievances in violation of the First Amendment. After discovery, the case proceeded to trial, during which Hundley and all three defendants testified. Before the case was submitted to the jury, the parties disputed the framing of the questions on the verdict sheet, and Hundley's counsel agreed that Hundley's theory of retaliation relates to the incident on December 20, and not its aftermath.[1]

The jury delivered a split verdict, finding against Hundley on his excessive force claim but in favor of Hundley on his retaliation claim, and awarding him compensatory and punitive damages. Defendants subsequently moved to vacate and set aside the jury verdict pursuant to Federal Rule of Civil Procedure 49 and, with respect to the retaliation claim, for judgment as a

---

[1] Hundley's complaint also alleged, as a basis of his retaliation claim, that Defendants filed a false misbehavior report against him after the incident. However, Hundley's counsel abandoned this theory of the claim at trial in order to simplify the verdict sheet with respect to a damages award. Some testimony about the misbehavior reports and false statements contained therein was elicited from Defendants at trial as relevant to their credibility as witnesses.

matter of law under Rule 50(b), to alter or amend the judgment under Rule 59(e), or in the alternative for a new trial under Rule 59(a). The district court denied the motion and entered judgment in favor of Hundley.

On appeal, Defendants challenge only the district court's denial of their motion for a new trial on the retaliation claim. They argue that they are entitled to a new trial because the jury's split verdicts on the excessive force and retaliation claims are "ineluctably inconsistent." Appellants' Br. at 2 (internal citation omitted). Specifically, Defendants assert that a jury finding that they did not use excessive force during the incident is equivalent to a finding that they acted in good faith in their use of force, and, therefore, that their actions during the incident could not have been retaliatory in nature.

We review the denial of a motion for a new trial under Rule 59(a) for abuse of discretion. *SEC v. DiBella*, 587 F.3d 553, 563 (2d Cir. 2009). "We have held that a motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (alteration adopted) (internal quotation marks and citation omitted).

Under our precedent, "ineluctably inconsistent" *special* verdict answers require retrial. *Id.* (internal quotation marks, citation, and emphasis omitted); *see also* Fed. R. Civ. P. 49(a) (special verdicts). However, the same is not true for inconsistent *general* verdicts on separate claims. *See Cash v. Cnty. of Erie,* 654 F.3d 324, 343 (2d Cir. 2011) ("[A]ny inconsistency between general verdicts on [plaintiff's] federal and state claims would not necessarily require retrial."); *accord Globus v. L. Rsch. Serv., Inc.*, 418 F.2d 1276, 1290 n.17 (2d Cir. 1969) ("It has been said again and again . . . that consistent jury verdicts are not, in themselves, necessary attributes of a valid

judgment."). In other words, with respect to a general verdict, the focus is not on any purported inconsistency between the jury's verdicts as to the separate claims, but rather on whether there was sufficient evidence to support a finding of liability on the claim as to which the plaintiff prevailed. *See Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 52–53 (2d Cir. 2014).

Here, it is clear from the verdict sheet and the jury instructions that the jury's verdicts on the excessive force and retaliation claims, which contained no special interrogatories, were general verdicts. *Lavoie v. Pac. Press & Shear Co., a Div. of Canron Corp.*, 975 F.2d 48, 54 (2d Cir. 1992); *see also Jarvis v. Ford Motor Co.*, 283 F.3d 33, 56 (2d Cir. 2002) (Sotomayor, J.) ("[W]here a jury is instructed to apply legal principles and assign liability, the answers to the questions submitted to the jury are not special verdicts, despite the use of those words in the title appended to the form, and Rule 49(a) therefore does not apply." (internal quotation marks and citation omitted)). Accordingly, because the claims in this case involved a general verdict and there is no basis to challenge the sufficiency of the evidence to support liability on the retaliation claim (and Defendants made no such challenge below), the district court acted well within its discretion in denying a retrial solely due to any alleged inconsistency between the verdicts. *See Matusick*, 757 F.3d at 52–53; *accord Saeed v. Kreutz*, 606 F. App'x 595, 598–99 (2d Cir. 2015) (summary order).

In any event, the verdicts were not irreconcilably inconsistent. We emphasize that, "when faced with an apparent inconsistency, we must adopt a view of the case, if there is one, that resolves any seeming inconsistency, making every attempt to reconcile the jury's findings, by exegesis if necessary." *Ali v. Kipp,* 891 F.3d 59, 65 (2d Cir. 2018) (internal quotation marks and citations omitted); *accord Harris v. Niagara Mohawk Power Corp.*, 252 F.3d 592, 598 (2d Cir. 2001).

Defendants argue that the verdicts on the two claims are irreconcilable because the same conduct of the Defendants provided the basis for both claims. In particular, because there was no

dispute that Hundley satisfied the objective element of an excessive force claim under the Eighth Amendment, Defendants argue that, "[i]n rejecting plaintiff's Eighth Amendment claim, the jury therefore necessarily found that defendants' use of force failed to satisfy the subjective element of that claim requiring a sadistic and malicious use of force—*i.e.*, bad faith—and found instead that defendants used force in a good-faith attempt to restrain plaintiff." Appellants' Br. at 18; *see also Baskerville v. Mulvaney*, 411 F.3d 45, 47–48 (2d Cir. 2005) (describing elements of Eighth Amendment excessive force claim). Thus, relying on *Baskerville*, Defendants contend that "a jury finding that force was applied in good faith precludes a finding of retaliation, based on that same use of force, on a First Amendment claim." Appellants' Br. at 18.

On this record, we find Defendants' argument unpersuasive. As conceded by Defendants at oral argument, a court must consider the jury instructions along with the verdict sheet in examining whether a seemingly inconsistent verdict can be reconciled based upon the evidence heard by the jury. *See, e.g.*, *Baskerville*, 411 F.3d at 49–50 (analyzing jury instructions in connection with claim of inconsistent verdicts). In this case, an examination of the jury instructions on each claim (which Defendants did not challenge below and do not challenge on appeal) reveals at least two independent ways in which the jury's general verdicts can be reconciled.

First, the jury instructions did not limit the alleged "adverse action" underlying Hundley's retaliation claim to the alleged assault by Defendants that resulted in his broken rib, but rather included *any* conduct by Defendants during the December 20 incident with Hundley that met the applicable legal standard. Indeed, the district court broadly instructed the jury that "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his constitutional rights constitutes an adverse action for a claim of retaliation." Joint App'x at 527;

6

*see Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (describing legal elements of a retaliation claim). Therefore, even if the jury concluded that Defendants' use of force in subduing Hundley did not violate the Eighth Amendment, they could have found that other aspects of the incident met the applicable standard. For example, the jury could have found under that instruction that the pat-frisk of Hundley, immediately prior to the use of force, was performed solely to retaliate against Hundley for filing grievances about inappropriate and unwarranted pat-frisks in the Facility, and would deter a similarly situated individual from exercising his First Amendment rights, thereby providing a basis for liability on the retaliation claim.

Although Defendants suggest that there was insufficient evidence to support a jury verdict under that particular theory, we disagree. The jury heard four accounts of what transpired during the incident, one from each party to this appeal. Hundley testified that the pat-frisk occurred inside his cell in contravention of prison procedures, and that it would have been impossible for the officers to have initiated the frisk, as Defendants claimed, immediately outside his cell, because "there's no room outside the gallery." Joint App'x at 156. In summation, Hundley's counsel argued that the pat-frisk "was a pretext for an assault," that Defendants lied about the pat-frisk taking place outside the cell, and that the entire purpose of visiting Hundley's cell—including the pat-frisk—was retaliation. *Id*. at 376; *see also id.* at 378 (arguing to the jury that "pat-frisks inside an inmate's cell are clearly, clearly disallowed" and, thus, "if [Defendants] were to admit that they did a pat-frisk inside the cell, they would be admitting from the outset that they were up to no good" and "[s]o they had to say it was outside the cell"); *id*. at 385 ("[T]his wasn't a spontaneous event. This wasn't something that kind of started off small and escalated into an excessive force incident. This was planned. Those three guys arrived on H block with a plan to beat up Mr. Hundley and whatever else they were planning to do to him.").

7

When faced with conflicting versions of events, "[a]s in most trials, and especially in one where participants are giving their accounts of events occurring rapidly and in a highly charged atmosphere, the jurors were not required to accept the entirety of either side's account, but were free to accept bits of testimony from several witnesses and to make reasonable inferences from whatever testimony they credited." *Haywood v. Koehler*, 78 F.3d 101, 105 (2d Cir. 1996). This trial record allowed the jury to balance all of the evidence from the incident and rationally conclude, after making the necessary credibility determinations, that the pat-frisk was done solely for the purpose of harassing and retaliating against Hundley because he filed grievances about pat-frisks and that such conduct would deter a similarly situated person of reasonable firmness from filing such grievances in the future. Those factual findings support liability on the retaliation claim even if the subsequent use of force was justified once Hundley "came off the wall" during the pat-frisk.[2] Joint App'x at 279. Because the jury's general verdict under the instructions provided by the district court rationally allowed for this separate theory of liability on the retaliation claim, the district court did not abuse its discretion in denying Defendants' motion for a new trial based on purportedly inconsistent verdicts.

Second, as the district court explained, the instructions also allowed the jury to rationally find that the force was not used maliciously and sadistically, and thus did not violate Hundley's Eighth Amendment rights, but was still retaliatory. More specifically, the jury was instructed that, to prevail on the excessive force claim, Hundley must prove "that the defendant[] you are

---

[2] Defendants suggest that the jury could not rationally find that the pat-frisk was retaliatory because, when asked to describe the pat-frisk during the trial, Hundley testified it was a "[n]ormal pat-frisk" and, as noted *supra*, that he "had no complaints of the pat-frisk." Joint App'x at 137. However, in context, a jury could have reasonably construed that testimony to mean that there was nothing unusual about the *manner* of the pat-frisk (as opposed to the earlier pat-frisks about which he had complained), rather than a concession that the pat-frisk itself as part of a purported interview about his grievances was not itself retaliatory. Indeed, as noted *supra*, Hundley testified that the pat-frisk was conducted inside his cell in violation of the Facility's protocol, contrary to Defendants' testimony that it was performed outside the cell.

8

considering used force against [him] maliciously and sadistically, for the very purpose of causing [him] harm." Joint App'x at 523–24. The district court further instructed the jury:

> To act "maliciously" means to intentionally do a wrongful act without just cause or excuse, with an intent to inflict injury or under circumstances that show an evil intent. To act "sadistically" means to do a wrongful act with extreme or excessive cruelty.

Joint App'x at 524. Although the jury was never instructed about the "good-faith" use of force, Defendants argue that "[a] finding that force was not applied maliciously and sadistically . . . necessarily implies a good-faith use of force and precludes a finding of retaliatory animus." Appellants' Br. at 19.

We disagree based on the instructions provided to this jury. Under these instructions, the jury could have found that defendants did use some degree of unnecessary force against Hundley during the cell visit to retaliate against him for filing a grievance, but did not intend to "inflict injury" and did not commit "a wrongful act with extreme or excessive cruelty," and that Hundley's rib was broken when the retaliatory plan unintentionally got out of control and Hundley fell to the ground. If the jury made those factual findings, it could have rationally concluded under the instructions that Defendants were liable for retaliation, but not excessive force.

Although Defendants note that we have explained that "the use of force 'maliciously and sadistically' merely describes a bad-faith use of force," Appellants' Br. at 19 (citing *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)), the jury was not instructed about "good faith" or "bad faith" in this case. Because Defendants did not ask the district court to include any such language in the instructions on the excessive force claim, the district court did not abuse its discretion in determining that Defendants were not entitled to a new trial based on seemingly inconsistent verdicts that potentially arose from confusion created by the agreed-upon instruction. *Globus*, 418 F.2d at 1289–90 (rejecting challenge to a jury's verdict as inconsistent where, *inter alia*,

9

"[defendant's] strategy in trying the case may have contributed to any confusion the jury may have experienced").

Finally, although Defendants heavily rely upon our decision in *Baskerville* to support their position, that reliance is misplaced. To be sure, in *Baskerville*, we held that the district court did not err in determining that, once the jury found in favor of the defendant on the plaintiff's excessive force claim, the retaliation claim did not need to be submitted to the jury because it failed as a matter of law. 411 F.3d at 50. However, unlike here, the jury charge in *Baskerville* on the defendants' subjective intent on the excessive force claim "explicitly allowed the jury to consider 'whether the force was applied in order to retaliate against the plaintiff for his religious expression . . . .'" *Id.* at 49. We thus concluded that the district court's post-verdict dismissal of the retaliation claim was appropriate because the instruction provided the jury with the opportunity to consider the defendants' retaliatory motivation in connection with the excessive force claim. And, although it did not put that First Amendment claim squarely before the jury, "it did put all alleged conduct or harm in [the] case that could possibly form the basis of [that] claim[] before the jury." *Id*. at 50. Moreover, the *Baskerville* instruction on excessive force explained to the jury that the subjective element of the excessive force claim "turn[ed] upon *whether the force was applied in a good-faith effort to maintain or restore discipline*, or maliciously or sadistically to cause harm." *Id*. at 48 (emphasis added). After describing the factors that could support a finding of maliciousness (including a retaliatory motive), the instruction stated: "If, on the other hand, reflection upon these factors leads you to find that the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied." *Id*. Therefore, we concluded that, "[i]f the jury found, as it did, that the officers' use of force did not violate the Eighth Amendment, they necessarily found that it was

10

justified and applied in good faith, and given this, there was no evidence that could have logically and consistently supported a finding for [plaintiff] on . . . [his] religious retaliation claim." *Id*. at 50.

The components of the jury instruction that were critical to our holding in *Baskerville* are completely absent in this case—namely, here, the jury was never instructed to consider the alleged retaliatory motive in connection with the "malicious and sadistic" element of the excessive force claim, nor was the subjective intent element with regard to the excessive force claim framed as a binary choice between force applied "in a good-faith effort to maintain or restore discipline" and that applied "maliciously or sadistically to cause harm." *Id*. at 48. Thus, our analysis in *Baskerville* is inapposite and did not require the district court in this case to conclude that the verdicts on the excessive force and retaliation claims, based on the jury instructions, were irreconcilable and required a new trial.[3]

In sum, we conclude that the district court did not abuse its discretion in denying Defendants' motion for a new trial based on purportedly inconsistent verdicts.

---

[3] For the same reasons, we conclude that our recent holding in *Barnes v. Rock*, No. 22-2902, 2024 WL 2973709 (2d Cir. June 13, 2024) (summary order), does not dictate a different result in this case. In *Barnes*, relying upon *Baskerville*, we held that the district court did not err in granting judgment as a matter of law on a prisoner's retaliation claim because "[t]he jury verdict that [defendants] did not subject [plaintiff] to excessive force precludes a finding that the same, objectively serious conduct was exercised in retaliation for grievances filed against them." *Id*. at *1. However, there is no indication in *Barnes* that the evidence at trial allowed the jury to find that any other conduct by the defendants beyond the alleged excessive force itself (such as the pat-frisk here) could provide a separate adverse action for the retaliation claim. Indeed, the district court had granted the motion for judgment as a matter of law because Barnes had not introduced "admissible evidence of retaliatory intent" at trial with respect to one incident, and with respect to another incident, "because the grievance that the Plaintiff wrote and relied upon in support of the retaliation claim, was not received until after th[e] date" of the alleged force. D. Ct. Dkt. 9:13-cv-164-DJS, ECF No. 790 at 14. Moreover, as in *Baskerville*, the jury was instructed in *Barnes* that, to find in plaintiff's favor in connection with the subjective element of the excessive force claim, plaintiff must prove that "the Defendant acted maliciously and sadistically for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline." *Id*., ECF No. 738 at 18. As noted above, this "good faith" language was completely absent from the instructions in this case.

11

\*     \*     \*

We have considered Defendants' remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court